## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFREY HARRIS, | ) | |
| WILLIE BERNARD MACK, | ) | |
| DEMETRIUS PARHAM and | ) | |
| HENRY TARVER, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| Plaintiffs, | ) | **2:06-CV-00875-ID-CSC** |
| | ) | |
| vs. | ) | |
| | ) | |
| MID STATE LAND & TIMBER | ) | |
| COMPANY, INC., D/B/A | ) | |
| SEDGEFIELDS PLANTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SANCTIONS[1]

COMES NOW Defendant Mid State Land & Timber Company, Inc., formerly d/b/a Sedgefields Plantation (hereafter referred to as "Defendant" or "Mid State"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, and submits this Memorandum of Law in support of Defendant's Motion for Sanctions as to Plaintiffs' Amended Complaint, asserting claims of race discrimination on behalf of Plaintiff Roy Lee ("Lee").

---

[1] Defendant has edited this document to reflect a firm name change since service of this document on Plaintiffs' counsel in November 2006, correct spacing on later pages, and add this footnote. No changes have been made to the substance of the Memorandum. Compare Exhibits to Exhibit H hereto.

## INTRODUCTION

Defendant Mid State owned, until its sale in May 2006, Sedgefields Plantation ("Sedgefields"). Sedgefields was developed by the Maytag family in the early 1930s and has a rich tradition for quality quail hunting. Indeed, Sedgefields continues to host the National Amateur Free For All Championship for bird dogs. Despite its fabled quail hunting past and its continued association with national field trials, the Sedgefields property over the past number of years has not been properly cultivated and managed for wild quail covies, resulting in a reduction of its wild quail population. In an effort to remedy this problem, Mid State hired Joel Norman ("Norman") from the Mill Pond Plantation in Thomasville, Georgia, an area renowned around the world for superior quail hunting, to cultivate and manage the land for wild quail habitation and return Sedgefields to its former prominence as a top rate quail hunting plantation. Defendant paid Norman $70,000 to leave Mill Pond and come to Sedgefields. Prior to coming to Sedgefields, Norman had twenty-seven years of bird dog training and handling experience and twenty-four years of experience working on quail hunting plantations, the last seven years of which he was the plantation manager. In addition to his work experience, Norman has a two-year associate degree in wild life management.

Lee, on the other hand, has no education in wild life management and had no

2

prior quail hunting experience until he was hired as a Field Laborer at Sedgefields in September 2000 at $6.00 per hour. While Defendant admits that Lee was trained in quail hunting while he worked at Sedgefields and that he, for a short time during the off-season, managed both quail and deer operations at Sedgefields, Lee's qualifications–as to quail hunting and plantation management–pale in comparison to Norman's educational background and work experience. Despite having this knowledge, Plaintiffs and their counsel amended Plaintiffs' Complaint to add Roy Lee as a Plaintiff and to assert Section 1981 claims of race discrimination based on the wage disparity of Lee and Norman. As there is simply no good faith basis in fact or in law to support Lee's claims, Defendant Mid State is entitled to its fees and costs associated with defending these frivolous claims.

## BACKGROUND FACTS

Lee was employed by Mid State from September 2000 until May 19, 2006, when all of Mid State's employees were terminated upon the sale of Sedgefield's Plantation to Tolleson Land & Timber. Prior to coming to work for Defendant, Lee had no experience whatsoever with quail hunting, no managerial experience in hunting operations, and no education in wildlife management. Declaration of Roy Lee, attached hereto as Exhibit A; Application of Roy Lee, attached hereto as Exhibit B. Lee does not have a college degree. Resume of Roy Lee, attached hereto as

Exhibit C.  Despite Lee's lack of credentials, when Defendant was shorthanded in the summer of  2005, Lee, who was then earning $12.00 per hour, was selected to temporarily oversee Defendant's quail and deer hunting operations.   Deposition of David Carroll ("Carroll Dep."), pertinent portions of which are attached hereto as Exhibit D, at 97-98.  During that time frame, quail season was over, deer season was over, and Lee's duties involved primarily "summertime maintenance."  Carroll Dep. at 97-98.  Lee was paid a salary of over $41,000 by Defendant starting in January 2006 and continued to earn over $41,000 when he was placed in charge of solely the deer hunt activities.  Plaintiffs' First Amended Complaint.

In his Complaint, Lee claims that he was paid less than Joel Norman ("Norman"), a white employee, because of his race.  Unlike Lee, Norman has an associate degree in wildlife technology.  Application of Joel Norman, attached hereto as Exhibit E; Deposition of Joel Norman ("Norman Dep."), pertinent portions of which are attached hereto as Exhibit F, at 19.   In contrast to Lee, who did not have any personal quail hunting experience, Norman, prior to coming to work for Defendant, had twenty-seven years experience in bird dog training and handling for quail hunts, twenty-four years of experience working on quail hunting plantations, and approximately seven years experience managing a thirty-three hundred acre plantation in Georgia and supervising up to twenty plantation employees.

4

Application of Joel Norman, attached hereto as Exhibit E; Norman Dep. at 37-41. Norman was experienced in cultivating and maintaining a wild quail population and handled this aspect of quail operations for his former employer. Norman Dep. at 39-41.

In the summer of 2005, Mid State advertised for an individual with experience quail hunting and horse and dog handling to manage Defendant's quail operations. Norman Dep. at 47. With twenty-plus years experience in quail hunting operations and bird dog hunting, plus seven years experience as a plantation manager for a three thousand acre plantation in Georgia, Norman more than satisfied Defendant's requirements for an Quail Operations Manager. Additionally, with his experience in wild quail operations, Norman was able to institute a wild quail recovery program at Mid State. Norman Dep. at 69-70. In his deposition, Norman testified that he needed to be paid $70,000 to be "lured away" from his position of plantation manager in his hometown in Georgia. Norman Dep. at 50. In September 2005, Norman was hired by Defendant to manage quail operations at his requested salary of $70,000. Norman Dep. at 50, 72.

Before filing the Motion to Amend to add Roy Lee as a plaintiff and assert a claim of wage discrimination based upon the compensation paid to Norman, Lee's counsel had received the personnel files of Lee and Norman and had deposed Norman

concerning his employment qualifications and employment history. See Response to Motion to Compel, filed September 9, 2006 in *Foster v. Mid State*, 2:06-CV-00405-ID-SRW; Order on Motion to Compel, entered on September 14, 2006 in *Foster v. Mid State*, 2:06-CV-00405-ID-SRW (compelling production of portions of Lee's personnel file relating to compensation and qualifications);[2] Norman Dep. at 1, dated September 8, 2006. In addition, by letter dated August 18, 2006, prior to the depositions of Defendant's former Plantation Manager David Carroll, Norman, and Lee, counsel for Defendant forewarned counsel for Plaintiffs that there was no basis whatsoever for a claim of race discrimination by Lee:

> I have enjoyed working with you in the past and I value our friendly relationship; however, let me be blunt: there is no good faith basis in fact or in law to suggest that there is a discriminatory basis for the differences in pay between Mr. Lee and Mr. Norman, and Mid State will aggressively defend itself against any such claims.

Correspondence from counsel for Defendant, dated August 18, 2006, attached hereto as Exhibit G. Rather than heed the warning and acknowledge the pertinent facts and law, Plaintiffs and their counsel dove headfirst into this spurious litigation with full knowledge of the colossal disparity in qualifications between Lee and Norman and with absolutely no thought as to the ethical constraints of Rule 11.

On November 28, 2006, Defendant served Lee's counsel with a copy of

---

[2]  Plaintiffs' counsel in the *Harris* litigation is also counsel in the *Foster* litigation.

Defendant's Motion for Sanctions and this supporting Memorandum of Law and requested that Lee's counsel voluntarily dismiss Lee's claim. A copy of counsel's correspondence is attached hereto as Exhibit H. Lee's counsel continued to prosecute this frivolous claim.

### STANDARD FOR AN AWARD OF FEES UNDER FED. R. CIV. P. 11[3]

An attorney who presents to the Court any paper, motion, or pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that there is "evidentiary support" for any allegations or factual contentions. FED. R. CIV. P. 11(b)(3). Rule 11 sanctions are proper:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

---

[3] Rule 11(1)(A) contains a "safe harbor" provision which states that:

a motion for sanctions under this rule . . . shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

FED. R. CIV. P. 11(1)(A). By serving Lee with a copy of Defendant's Motion and this Memorandum in November 2006, Defendant complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

*Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting

*Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995)).

In deciding the propriety of Rule 11 sanctions, the court must first determine

whether the party's claims are objectively frivolous and then, if they are, whether the

signatory to the pleading should have been aware that they were frivolous--whether

he would have been aware of the frivolousness if he had made a reasonable inquiry.

*Worldwide Primates,* 87 F.3d at 1254; *Jones,* 49 F.3d at 695.   In determining

reasonableness, the court may consider:   how much time was available for

investigation; whether reliance upon representations of the client was necessary;

whether the paper was based upon a plausible view of the law; and the extent to

which factual development requires discovery. *Jones,* 49 F.3d at 695.   The relevant

time period is the time the pleading is signed so the Rule 11 inquiry focuses only on

the merits of the pleading from facts known or available to the attorney at the time of

filing. *Jones,* 49 F.3d at 694-95 (citing *Souran v. Travelers Ins. Co.,* 982 F.2d 1497,

1507, 1508 (11th Cir.1993)).

## ARGUMENT

In his Complaint, Lee asserts a claim of intentional discrimination with regard

to his wages.   "To state a prima facie case of intentional discrimination in

compensation, a plaintiff must establish that (1) [he] belongs to a [protected class];

8

(2) [he] received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) [he] was qualified to receive the higher wage." *Cooper v. Southern Co.,* 390 F.3d 695, 735 (11th Cir. 2004). There is no dispute that Norman had exponentially more education, quail hunting experience, and plantation management experience than Lee. Accordingly, Lee cannot show that he and Norman were similarly situated in all respects other than race and, therefore, cannot establish a prima facie case of wage discrimination. *See Jackson v. Bellsouth Telecomm.,* 372 F.3d 1250, 1273 (11th Cir. 2004) (explaining that "[w]hen comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides [the protected trait], since different treatment of *dissimilarly* situated persons does not violate civil rights laws."); *Cooper,* 390 F.3d at 735-45 (affirming summary judgment in multi-plaintiff case where plaintiffs alleged wage discrimination based on race because plaintiffs failed to identify proper comparators and/or failed to rebut the legitimate reasons – education and prior experience – for wage disparities). *See also Beard v. 84 Lumber Co.,* No. 06-12220, 2006 WL 2946883, *4 (11th Cir. Oct. 17, 2006) (affirming summary judgment in wage disparity case based on failure to identify similarly-situated comparator) (table). Because Lee cannot establish a prima facie case, and the undisputed evidence conclusively precludes any inference that

9

compensation in this case was based upon race, Lee's claim is objectively frivolous.

Significantly, for purposes of Rule 11, the frivolousness of Lee's claim was apparent to Lee's counsel before this claim was filed. Lee's counsel was not forced to rely upon his client's representations as to his comparable qualifications or to file this claim based upon a limited investigation. At the time of filing Lee's claim, counsel had the personnel files of Lee and Norman, including their respective applications for employment. In addition, Lee's counsel had deposed Norman as to his background and qualifications. Lee's counsel knew that Norman had a degree in wildlife technology, experience in cultivating wild quail populations, twenty-plus years more experience in quail operations than Lee, and seven years experience as the manager of an entire plantation (as compared to Lee's single summer season of management), during which time he supervised up to twenty plantation employees. It is difficult to imagine a case where the disparities in qualifications could be more obvious. In sum, there was no reasonable factual basis for Lee's allegations of unlawful wage disparity and no reasonable chance for success on his claim of race discrimination.

Given these facts, all of which were known to Lee's counsel prior to filing this claim, Lee's counsel should have been aware that there was no reasonable basis to file this suit, much less to pursue it after Defendant's request for dismissal. While

zealous advocacy is commendable, counsel cannot permit the "objectives of the client to override their ancient duties as officers of the court." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546-47 (11th Cir. 1993). Counsel have a duty not to "burden the federal courts by pursuing claims that are frivolous on the merits." *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). By filing Lee's claim of wage discrimination, Lee's counsel has improperly burdened this Court, caused Defendant to incur significant expense to answer and defend a frivolous claim, and violated the provisions of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, sanctions are warranted. *See, e.g., Crumpton v. St. Vincent's Hosp.,* 174 F.R.D. 493, 496 (N.D. Ala. 1997) (granting motion for Rule 11 sanctions and awarding defendant its attorneys' fees where "the record establishes that plaintiff was presented with the undisputed evidence proving that the employment actions taken by St. Vincent's in relation to her were based on reasons other than race or her disability").

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Mid State Land & Timber Company, Inc. respectfully requests this Court enter an Order finding sanctions are warranted under Rule 11 of the Federal Rules of Civil Procedure and awarding Defendant its reasonable fees and expenses for defending Plaintiff Roy

11

Lee's claim and preparing and filing the instant motion.

Respectfully submitted,


/s/ Carter H. Dukes
Carter H. Dukes
Kimberly W. Geisler
Attorneys for Defendant
Mid State Land & Timber Co., Inc.
d/b/a Sedgefields Plantation

**OF COUNSEL:**
SCOTT DUKES & GEISLER, P.C.
2100 Third Avenue North
Suite 700
Birmingham, Alabama  35203
(205) 251-2300

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jerry D. Roberson, Esq.
Roberson & Roberson
8 Office Park Circle
Suite 150
Birmingham, Alabama 35223

Albert H. Adams, Jr., Esq.
Irby Law Firm, LLC
Post Office Box 910
Eufaula, Alabama 36072

DONE this the 30TH day of August, 2007.

/s/ Carter H. Dukes
Of Counsel

39270.1

13

# Exhibit A

Declaration

My name is Roy Chester Lee. I am over the age of 19 yrs and am suffering from no legal disability. I started working at Sedfields sometime in 2000, earning $6.50/hr. Before working at Sedfields, I worked at Columbus Mills. Before working at sedgefields, I had experience working with horses, tractors, and deer hunting. I did not have any prior experience with Quail hunting. I was trained as to quail hunting at sedgefields by Hunter Mc Duffie. I later managed the quail hunts and deer hunts.

I later got a raise to $10.00/hr and helped run Sedgefields during a time when there were several managers. Sometimes I was the only one to manage Sedgefields for months at a time. I asked to be put on salary and Mid state would not do it. Mid State later put on a salary earning $40,000 a year.

I have personal Knowledge of some of Norris Foster's work performance issues during the first time he worked at Sedgefields. These issues include saying that he fixed the plumbing in the barn when he did not and stealing traps, dog feed, and birds.

In 2005, I hired Norris Foster back

0196    CONFIDENTIAL
DEFENDANT'S PRO

## DECLARATION

at Sedgfields at 6.55 hr. I did not have any problems with Norris Foster at this time, and I told him that if he stole anything again I would fire him immediately. I told him you know what's in your record and he said "yes." When Joel Norman began working at Sedgfields, Norris Foster worked under him. Norris complained about Joel and Joel complained about Norris. However, I did not personally observe any performance issue involving Norris Foster. I have never heard anyone use a racial slur. The only thing that I have observed that might be discrimination as to me is my pay difference with Joel Norman because I was doing both jobs for a period of time before Joel Norman started working at Sedgfields. I have not complained to my new employer about this pay difference.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August, 2006

# Exhibit B

# The Peble Corp.

## EMPLOYMENT APPLICATION

*PLEASE PRINT ANSWERS TO THE FOLLOWING QUESTIONS CAREFULLY AND IN INK. TO BE CONSIDERED FOR EMPLOYMENT, ALL ITEMS MUST BE COMPLETED, INCLUDING SIGNA-TURE. THIS APPLICATION IS VALID FOR 30 DAYS. IF YOU WISH TO BE CONSIDERED FOR EMPLOYMENT AFTER THIS APPLICATION EXPIRES, THEN YOU MUST RE-APPLY.*

NAME _Roy      Chester      Lee_ ___ TELEPHONE NUMBER

ADDRESS _ REDACT ___ Home # ( REDACT

CITY _ REDACT _ STATE _AL_ ZIP _ _ Daytime # REDACT

SOCIAL SECURITY NUMBER   REDACT

**EMPLOYMENT INTERESTS:**

Type of work desired _Horse/Dog Trainer/Hunting Guide or Tractor_

Full Time _X_ Part Time _____ Temporary _____

Starting pay expected _$6.00 per Hour_ Date Available to start _Any time_

---

**IF APPLICABLE:**

Are you willing to travel? _____ If yes, what percentage of the time _____

Would you be willing to relocate? _____

---

Would you object to:  Irregular work hours  ☐ YES  ☒ NO   Night work  ☐ YES  ☒ NO

Swing or fluctuating shift work  ☐ YES  ☒ NO

**SPECIAL SKILLS - COMPLETE IF APPLICABLE TO THE POSITION FOR WHICH YOU ARE APPLYING:**

Skill _Horse Training_ Experience _9 years_

Skill _License forklift Operator_ Experience _23 years_

Skill _Dog Trainer_ Experience _13 years_

Please discuss other specialized skills you feel are pertinent to the job to which you are applying _____

_____

**UNITED STATES MILITARY SERVICE STATUS:**

Past Military Service - FROM _____ , 19 ___ TO _____ , 19 ___

Branch _____ Rank on discharge _____ Present Status _____

List duties and special training

## EDUCATION:

| | NAME OF SCHOOL AND LOCATION | MAJOR AREA OF STUDY and/or DEGREE RECEIVED |
|---|---|---|
| High School | Bullock County High School Union Springs, AL | Science, Math, History |
| Jr. College, College, or University | | |
| Technical or Trade Schools | | |

Honors and Scholarships _____

Grade Average (approx.)  High School ____X____  College _____ Other _____

## General Information:

Are you legally authorized to work in the United States?  ☒ YES  ☐ NO  If not, what is your present status and

do you have a work visa? _____

Have you ever been convicted of a crime?  ☐ YES  ☒ NO  If yes, please explain. Give dates, charge, penalty assessed or disposition.  Conviction will not necessarily bar employment.  Consideration will be given to the nature of the crime, age at the time of offense, rehabilitation and the position for which you are applying.

_____

_____

Have you ever been discharged from a job?  ☐ YES  ☒ NO  If yes, please explain _____

_____

_____

Have you ever been bonded?  ☐ Yes  ☒ NO  If yes, when and in what job _____

_____

_____

_____

CONFIDENTIAL DEFENDANT'S PROD

Do you have a valid, active driver's license?  ☒ YES  ☐ NO  Issuing State _____

Drivers License        REDACT        _____ Class of License _____

How long have you been a resident of this City ___4/ years___ State ___4/ years___

How long at your present address? _4/0 years_ Give previous address if less than one year at present

address _____

Are you over the age of 18?  ☒ YES  ☐ NO  If hired can you provide proof of age?  ☐ YES  ☐ NO

**EMPLOYMENT DATA:**

Have you ever been employed by this company before?  ☐ YES  ☒ NO  If yes, please give dates of

employment, position employed, and reason for leaving _____

_____

Please list all jobs (if not listed above), beginning with your present or last employer and working backwards
to earlier positions. Account for all periods, including unemployment, self-employment, and military service.
If additional space is needed, please list on a separate page or on the back of this form.

#1 DATES - From _July 9, 1978_ to _July 14, 00_

Company Name, City, and State _Beaulieu of America_

Supervisor's Name/Title _Lawrence Penn_ SALARY - Start $9.70 End 13.26 per h

Phone # _738-4600_ May we contact? _yes_ Final position with the company _Supervisor Trainee_

Reason for leaving? _Plant Closed_

DATES - From _Summer 75/76_ to _to Summer 1977_

Company Name, City, and State _Welsh Company of the South_

Supervisor's Name/Title _M. Driggers_ SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company _Assembly Worker_

Reason for leaving? _Plant Closed_

#3 DATES - From _____ to _____

Company Name, City, and State _Chris Caldwell Logging Company_

Supervisor's Name/Title _Chris Caldwell/Deceased_ SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company _Truck Driver,_
_Skidder / Tractor_
_Operator_

0175  CONFIDENTIAL
DEFENDANT'S PROD

**#4 DATES - From_____to_____**

Company Name, City, and State_____

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone #_____ May we contact?_____ Final position with the company_____

Reason for leaving?_____

---

**#5 DATES - From_____to_____**

Company Name, City, and State_____

Supervisor's Name/Title_____ SALARY - Start _____ End _____

Phone #_____ May we contact?_____ Final position with the company_____

Reason for leaving?_____

---

## PERSONAL REFERENCES (Not Former Employers or Relatives)

| Name and Occupation | Address | Phone Number |
|---|---|---|
| Hill + Hill Grocery<br>Milton Hill - Owner | Hwy, 82 E.<br>Miday, Alabama 36053 | 529-3700 |
| Bill Davis Grocery<br>Bill Davis - Owner | Rt. 1<br>Midway, Alabama | 529-9859 |
| Sherman Bowens Grocery<br>Sherman Bowens - Owner | Rt. 2<br>Midway, Alabama 36053 | 529-3327 |

The Pable Corp. is an Equal Opportunity Employer which endeavors, pursuant to all applicable Federal and State Laws, to give every applicant for employment, and every employee, equal consideration in all matters relating to employment, without regard race, color, sex, age, religion, national origin, citizenship and disability.

my signature below, I certify the facts set forth in this application for employment are true and complete to the best of my knowledge and belief, and I agree you may investigate my statements. I agree to permit all past employers to give any information concerning me and release them from liability in furnishing such information. I understand that my employment and, if employed, my continued employment, is conditional upon my participating in and clearing such security examinations or

investigations as may be deemed advisable by the company. I agree to participate in such examinations and investigations when requested to do so by the company, and agree that the company shall be held harmless and free from liability in connection with any security examination or investigation in which I may be involved.

I understand, if employed, false statements on this application shall result in disciplinary action up to and including discharge. Also if employed, I understand that it is the company's policy that all employees who do not have a written employment contract with the company for a specific, fixed term of employment are employed at the company's will. I understand that I would be subject to termination at any time, for any reason, with or without cause or notice.

_Ray Chester Lee_
**Applicant's Signature**

_August   10, 2000_
**Date Signed**

0176    CONFIDENTIAL
DEFENDANT'S PROD

Exhibit C

Roy Chester
7375          o
Hwy. 51 South
Midway, Alabama 36053
(334) 529-3965


**Objective:**          Horse/ Dog Trainer/ Hunting Guide

                        Beaullieu of America
**Experience:**         Supervisor: Lawrence Penn
                        Hicks Ind. Park
                        Union Springs, Alabama 36089
                        Job Title: Supervisor Trainee
                        Date Hired : 7/ 9 /😊
                        Job End : 7 / 14 / 00  Plant closed
                        (334) 738 – 4800

                        Welsh Company of The South
                        Supervisor : M. Driggers
                        Welsh Street
                        Union Springs, Alabama 36089
                        Job Title : Assembly Line Worker
                        Summer worker : 1975 / 76 / 77
                        Plant : Closed

                        Chris Caldwell Logging Company
                        Supervisor : Chris Caldwell / Deceased
                        Midway, Alabama 36053
                        Job Title : Truck Driver / Skidder / Tractor  Operator


Edcaton:

                        Bullock County High School
                        Sardis Road
                        Union Springs, Alabama
                        (334 ) 738 – 2198

                        Sparks State Technnical College
                        Eufaula, Alabama
                        CPR  Training Course / 1998
                        Computer Operator / 1998

0177   CONFIDENTIAL
       DEFENDANT'S PROD

Training:                   Machine Overhauling
                            License Fork Lift  Operator
                            Machine Technician
                            Supervisor Trainee / 3 years


References:                 Lawrence Penn
                            Plant Manager
                            Union Springs, AL 36089
                            (334) 738-4759 (H)
                            (334) 738-4600 (W)

                            Kathy Gilmore
                            Human Resources Manager
                            115 Industrial Park
                            Eufaula, AL 36027
                            (334) 687-2091 ext. 221

                            Milton Hill
                            Hill & Hill Grocery
                            Hwy. 82 E.
                            Midway, AL 36053
                            (334) 529-9859

0178  CONFIDENTIAL
      DEFENDANT'S PROD

Exhibit D

**American Court Reporting**
**toll-free (877) 320-1050**

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

CIVIL ACTION NUMBER

2:06-CV-00405-ID-SRW

NORRIS FOSTER,

    Plaintiff,

vs.

MID STATE LAND & TIMBER COMPANY, INC.,
d/b/a SEDGEFIELDS PLANTATION,

    Defendant.

THE VIDEOTAPED

DEPOSITION TESTIMONY OF:

DAVID CARROLL

September 8, 2006

1:29

    p.m.

COURT REPORTER:

Gwendolyn P. Timbie, CSR

**www.AmericanCourtReporting.com**
**September 8, 2006**



**American Court Reporting**
**toll-free (877) 320-1050**

Page 97

1          Q     Okay.  And, in fact, Roy --

2      before Joel was hired, Roy was doing both

3      jobs.  And when I say "both jobs," he was

4      running the deer and the quail, wasn't

5      he?

6          A     I will -- I would say this in

7      an answer:  In that when I was hired, I

8      was told that Ms. Davidson, who was the

9      general manager, and her husband, who was

10     working there, was -- he and her husband

11     was, more or less, in charge of -- over

12     the deer hunting and stuff.

13          The time that, quote, unquote, Roy

14     was in charge of all of it was a time when

15     we weren't actively participating in all

16     -- in any of those activities that were

17     ongoing.  Quail season was over with.

18     Deer season was over with.  And for that

19     time frame that he was, quote, unquote, in

20     charge of the plantation, it was,

21     basically, summertime maintenance and

22     things of that nature.  Not to discredit

23     his -- what Roy does for me.  He's a very

Page 98

1    valuable employee.

2        Q    Okay.  Well, that -- you're

3    saying that Roy was never over both of the

4    hunting operations during the season; is

5    that --

6        A    Not to my -- not to my

7    knowledge.

8        Q    I mean, that -- but in

9    fairness to that statement -- and I don't

10   disagree with what you say.  But in

11   fairness, you weren't there during the

12   hunting season --

13       A    That's correct.

14       Q    -- prior to that?

15       A    That is correct.

16       Q    So --

17       A    Yeah.

18       Q    Is that fair?

19       A    That is fair.

20       Q    Okay.  Now, did -- was there

21   ever any issue, that you were made aware

22   of, about the -- the employees getting off

23   early at homecoming?

Exhibit E

# The Peble Corp.

## EMPLOYMENT APPLICATION

*PLEASE PRINT ANSWERS TO THE FOLLOWING QUESTIONS CAREFULLY AND IN INK. TO BE CONSIDERED FOR EMPLOYMENT, ALL ITEMS MUST BE COMPLETED, INCLUDING SIGNA-TURE. THIS APPLICATION IS VALID FOR 30 DAYS. IF YOU WISH TO BE CONSIDERED FOR EMPLOYMENT AFTER THIS APPLICATION EXPIRES, THEN YOU MUST RE-APPLY.*

NAME __Joel S. Norman Jr.__   TELEPHONE NUMBER

ADDRESS __22137   Highway 29 N.__   Home # __(334) 738-5379__

CITY __Union Springs__ STATE __AL__   ZIP __36089__   Daytime # ( ) -

SOCIAL SECURITY NUMBER __252 – 86 – 2861__

## EMPLOYMENT INTERESTS:

Type of work desired_____

Full Time___✓___ Part Time_____Temporary_____

Starting pay expected_____ Date Available to start_____

---

**IF APPLICABLE:**

Are you willing to travel?_____ If yes, what percentage of the time _____

Would you be willing to relocate? __Yes__

---

Would you object to:  Irregular work hours  ☐ YES  ☒ NO   Night work  ☐ YES  ☒ NO

Swing or fluctuating shift work  ☐ YES  ☒ NO

## SPECIAL SKILLS - COMPLETE IF APPLICABLE TO THE POSITION FOR WHICH YOU ARE APPLYING:

Skill __Bird Dog Training & Handling__ Experience __27 yrs__

Skill __Plantation Mng__ Experience __2 yrs__

Skill_____ Experience_____

Please discuss other specialized skills you feel are pertinent to the job for which you are applying_____

_____

## UNITED STATES MILITARY SERVICE STATUS:

Past Military Service - FROM _____ TO _____

Branch _____ Rank on discharge _____ Present Status_____

List duties and special training

**EDUCATION:**

|  | NAME OF SCHOOL AND LOCATION | MAJOR AREA OF STUDY and/or DEGREE RECEIVED |
|---|---|---|
| High School | TCCHS Thomasville GA | High School Diploma |
| Jr. College, College, or University | Abraham Baldwin Agricultural College Tifton, GA | Associate Degree in Wildlife Technology |
| Technical or Trade Schools |  |  |

Honors and Scholarships _____

Grade Average (approx.)  High School _____ College _____ Other _____

**General Information:**

Are you legally authorized to work in the United States?  ☑ YES  ☐ NO  If not, what is your present status and

do you have a work visa?_____

Have you ever been convicted of a crime?  ☐ YES  ☑ NO  If yes, please explain. Give dates, charge, penalty assessed or disposition.  Conviction will not necessarily bar employment.  Consideration will be given to the nature of the crime, age at the time of offense, rehabilitation and the position for which you are applying.

_____

_____

Have you ever been discharged from a job?  ☐ YES  ☑ NO  If yes, please explain _____

_____

_____

Have you ever been bonded?  ☐ Yes  ☑ NO   If yes, when and in what job._____

_____

_____

_____

CONFIDENTIAL
DEFENDANT'S PROD.    0079

Do you have a valid, active driver's license?  ☑ YES  ☐ NO  Issuing State _____ G A

Drivers License # _252 -86 -2861_____ Class of License_____ C_____

low long have you been a resident of this City____ 20 _____ State____ GA _____

How long at your present address? _20_____Give previous address if less than one year at present

address_____

Are you over the age of 18?  ☑ YES  ☐ NO  If hired can you provide proof of age?  ☑ YES  ☐ NO

**EMPLOYMENT DATA:**

Have you ever been employed by this company before?  ☐ YES  ☑ NO   If yes, please give dates of

employment, position employed, and reason for leaving _____

_____

_____

Please list all jobs (if not listed above), beginning with your present or last employer and working backwards
to earlier positions. Account for all periods, including unemployment, self-employment, and military service.
If additional space is needed, please list on a separate page or on the back of this form.

#1 DATES - From __Aug 1984_ to __Sept 2005__

   Company Name, City, and State _Millpond Plantation, Thomasville, GA_

   Supervisor's Name/Title _____ SALARY - Start_____End_____

   Phone # _____ May we contact?_____Final position with the company _____

   Reason for leaving?_____

#2 DATES - From _Aug 1982___ to __Aug 1984__

   Company Name, City, and State_Gillionville Plantation, Albany, GA_

   Supervisor's Name/Title                              SALARY - Start_____End_____

   Phone #_____ May we contact?_____ Final position with the company_____

   Reason for leaving?_____

#3 DATES - From_____ to _____

   Company Name, City, and State_____

   Supervisor's Name/Title_____SALARY - Start_____End_____

   Phone #_____May we contact?_____ Final position with the company_____

   Reason for leaving?_____

CONFIDENTIAL
DEFENDANT'S PROD.    0080

#4 DATES - From_____to_____

Company Name, City, and State_____

Supervisor's Name/Title _____SALARY - Start _____End _____

Phone #_____ May we contact?_____Final position with the company_____

Reason for leaving?_____

_____

#5 DATES - From_____to_____

Company Name, City, and State_____

Supervisor's Name/Title_____SALARY - Start _____End _____

Phone #_____May we contact?_____Final position with the company_____

Reason for leaving?_____

PERSONAL REFERENCES (Not Former Employers or Relatives)

| Name and Occupation | Address | Phone Number |
|---------------------|---------|--------------|
|                     |         |              |
|                     |         |              |
|                     |         |              |

The Peble Corp. is an Equal Opportunity Employer which endeavors, pursuant to all applicable Federal and State Laws, to give every applicant for employment, and every employee, equal consideration in all matters relating to employment, without regard to race, color, sex, age, religion, national origin, citizenship and disability.

By my signature below, I certify the facts set forth in this application for employment are true and complete to the best of my knowledge and belief, and I agree you may investigate my statements. I agree to permit all past employers to give any information concerning me and release them from liability in furnishing such information. I understand that my employment and, if employed, my continued employment, is conditional upon my participating in and clearing such security examinations or

investigations as may be deemed advisable by the company. I agree to participate in such examinations and investigations when requested to do so by the company, and agree that the company shall be held harmless and free from liability in connection with any security examination or investigation in which I may be involved.

I understand, if employed, false statements on this application shall result in disciplinary action up to and including discharge. Also if employed, I understand that it is the company's policy that all employees who do not have a written employment contract with the company for a specific, fixed term of employment are employed at the company's will. I understand that I would be subject to termination at any time, for any reason, with or without cause or notice.

_____
Applicant's Signature

$9 - 1 - 05$
_____
Date Signed

CONFIDENTIAL
DEFENDANT'S PROD.    0081

Exhibit F

**American Court Reporting**
**toll-free (877) 320-1050**

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


CIVIL ACTION NUMBER

2:06-CV-00405-ID-SRW


NORRIS FOSTER,

    Plaintiff,

vs.

MID STATE LAND & TIMBER COMPANY, INC.,
d/b/a SEDGEFIELDS PLANTATION,

    Defendant.



THE VIDEOTAPED

DEPOSITION TESTIMONY OF:

JOEL NORMAN



September 8, 2006

9:11

    a.m.



COURT REPORTER:

Gwendolyn P. Timbie, CSR

COPY

Page 19

1          Q      Where did you attend college?

2          A      Abraham Baldwin Agriculture

3     College, Tifton.

4          Q      Okay.  And did you -- is that

5     a junior college?

6          A      It -- it is, yes.  About the

7     same thing.

8          Q      I mean, it -- they have

9     two-year degrees?

10         A      Two-year degrees.  And you --

11    or you can take your first two years there

12    and move on, you know.

13         Q      Okay.

14         A      It's also -- transfer.

15         Q      And so you got an associate

16    degree, a two-year degree --

17         A      That's right.

18         Q      -- in wildlife technology --

19         A      That's right.

20         Q      -- is that correct?  When did

21    you finish that college?

22         A      I think my -- I actually may

23    have received my diploma in '86, but I had

**American Court Reporting**
**toll-free (877) 320-1050**

Page 37

1    salary?

2         A     Yes, sir.

3         Q     How much was the salary?

4         A     I don't remember.

5         Q     Do they have any black

6    employees there?

7         A     Yes, sir.

8         Q     All right.  And who -- who

9    would you say would have been in charge of

10   that?

11        A     A guy by the name of Jesse

12   Jackson.

13        Q     Was he white or black?

14        A     He was white.

15        Q     Is he still living?  Do you

16   know?

17        A     I think so.

18        Q     Do you ever talk to him?

19        A     Not in the last couple of

20   years.

21        Q     All right.  Why did you leave

22   there in '84?

23·       A     I had an opportunity to work

Page 38

1      in my hometown, on a -- on a plantation

2      there.

3          Q     At Millpond?

4          A     At Millpond.

5          Q     Who owns Millpond Plantation?

6          A     It's now owned by the

7      Sedgewick -- Sedgewick family.

8          Q     Well, when you worked there,

9      who owned it?

10         A     The Sedgewick family owned it

11     for the last year.  The Perry family owned

12     it for the years prior to that.  They're

13     all first cousins.  I mean, it's all in

14     the same family, basically.  But...

15         Q     Okay.  Now, what was your job

16     at Millpond?

17         A     Well, for the first -- I don't

18     know.  First period, it was just a dog

19     trainer.  Title was a dog trainer, but I

20     did have a -- the responsibility of

21     looking after the quail woods.  In the --

22     the last, approximately, six years, I was

23     the manager and the dog trainer.

**American Court Reporting**
**toll-free (877) 320-1050**

Page 39

1    Q    Last six years, you were

2    manager?

3    A    Manager and dog trainer, with

4    the exception of -- the last year, I

5    brought in a -- a guy to -- to take the

6    dog -- the actual hunts out, and started

7    training him and getting him ready to do

8    that.  I had too much responsibility.

9    Q    Okay.  Well, as -- as a

10   manager at Millpond, did you hire and fire

11   employees?

12   A    Yes, sir.

13   Q    And you -- you worked there as

14   a manager for six or seven years; right?

15   A    That's right.

16   Q    So I -- how many employees did

17   you have?

18   A    It -- it varied from -- from

19   eight to twenty.  Seasonal.  We had some

20   seasonal help, and it fluctuated some.

21   Q    Did -- did they have any other

22   aspect to their operation other than the

23   quail hunting?  Did they farm or

**American Court Reporting**
**toll-free (877) 320-1050**

Page 40

1    anything?

2        A    We -- just a little bit.  Not

3    a lot.  Just -- we -- we did a little bit

4    once or twice.

5        Q    How many acres did they have?

6        A    The property that I was

7    responsible for was thirty-three hundred,

8    plus another -- approximately a thousand

9    that was neighbor's property -- family

10   property that we managed quail on.

11       Q    Did y'all set birds out?

12       A    No, sir.

13       Q    It was a -- it was a wild

14   quail?

15       A    All wild quail.

16       Q    Okay.  So you have to manage

17   that population --

18       A    Yes, sir.

19       Q    -- is that right?  Is that

20   what you're talking about, managing the

21   quail woods?

22       A    Yes, sir.

23       Q    How do you do that?

**American Court Reporting**
**toll-free (877) 320-1050**

Page 41

1           A      Well, it's -- that's not

2     easy.  That's not a question I can answer

3     just in a few minutes.  Do you want to

4     hear it?

5           Q      Well, I -- do you -- do you

6     feed them?

7           A      We do feed them.

8           Q      Okay.

9           A      You do feed them.

10          Q      Okay.

11          A      You feed them.  You burn

12    properly.  You -- you manicure the woods.

13    You trap -- you have it trapped.

14          Q      Do you provide cover for them?

15          A      We do.

16          Q      And --

17          A      That's -- that's included in

18    burning properly.

19          Q      Okay.  And -- and so it's a

20    year-round process --

21          A      Yes, sir.

22          Q      -- of making conditions

23    optimum for their population.

Page 47

1    was your hometown and your wife is from

2    there, why would you leave Millpond

3    Plantation?

4          A      Money.

5          Q      Well, how much money were you

6    making as a manager at Millpond?

7          A      Fifty thousand dollars a year.

8          Q      And somebody -- how did you

9    get in touch with Mid State Land and

10   Timber?

11         A      There was an ad in the paper,

12   and --

13         Q      What paper?

14         A      Thomasville Times-Enterprise.

15         Q      What did it say?

16         A      His -- something along the

17   lines of historical Sedgefields Plantation

18   is looking for someone with experience

19   with quail -- with equine -- equine and --

20   and dogs.  I don't remember exactly.  But

21   responsible for the dogs and the horses

22   and the hunting.

23         Q      Did it list a salary?

Page 50

1          A     David.

2          Q     And how much were you

3     making -- take to lure you away from your

4     hometown in Thomasville, Georgia?

5          A     Seventy thousand dollars.

6          Q     Seventy thousand dollars.

7     Plus what?  A truck?

8          A     All the benefits that I was

9     receiving, basically, in Thomasville.

10     Truck.

11          Q     Okay.  Does --

12          A     Insurance, house.

13          Q     Does Mid States provide you

14     with a vehicle?

15          A     They do.

16          Q     What kind of vehicle?

17          A     It's a Chevrolet -- four-wheel

18     drive, Chevrolet truck.

19          Q     What year?

20          A     I'm not -- I'm not for sure.

21     I would probably say an '04 or somewhere

22     along in there.  I'm not sure.

23          Q     Air conditioned?

Page 69

1    these people have him assigned to do.

2         Q    In fact, Roy Lee was doing

3    your job before you were hired, wasn't he?

4         A    No, sir.

5         Q    He wasn't?

6         A    No, sir.

7         Q    He wasn't taking people on

8    quail hunts?

9         A    He was putting birds out and

10   going and getting them and taking them

11   right back and shooting them, but he

12   wasn't doing what I do.

13        Q    Oh.  What is it that you do

14   that Roy wasn't doing?

15        A    Well, I'm not totally familiar

16   with everything Roy did.  But we have a

17   wild -- we have a wild quail recovery

18   program in place.  That wasn't being

19   done.

20        Q    What does that mean?  Tell me

21   what you mean about a "wild quail recovery

22   program."

23        A    Well, we're -- we're managing

Page 70

1    for wild quail on some of the property,

2    and we -- and we initiate an early release

3    program -- quail program on -- on another

4    portion of the property.

5         Q    What is an "early release

6    program"?  Is that where you set --

7         A    Set them out --

8         Q    -- your birds out?

9         A    -- a couple of months before

10   hunting season and try to carry them

11   through the hunting season.  Basically,

12   just trying to manage that population of

13   released birds.

14        Q    Now, that ain't setting them

15   out to shoot them, is it?

16        A    It is releasing them --

17   pre-releasing them months prior to hunting

18   them, to -- to simulate wild-bird type

19   hunting.  Different kind of dog.  Dog

20   steady to winging shot, not -- not dogs

21   flushing birds for you.

22        Q    Anything else you say you're

23   doing that Roy Lee didn't do?

Page 72

1    that was a guide?

2        A    I was the only person that was

3    a guide.

4        Q    Okay.  So when Norris

5    Foster -- and you worked with Norris from

6    the time of your hiring in September until

7    he was fired on December the 29th;

8    correct?

9        A    Pretty much.  The -- the first

10   few weeks was sort of a -- trying to

11   figure out who-could-help-who deal.  So I

12   can't remember exactly when he became

13   strictly to my crew, you know.

14       Q    Okay.  Well, what I'm saying

15   is, your time there at Sedgefields only

16   overlapped from September to the end of

17   December; isn't that fair?  From the time

18   of your hiring --

19       A    That's right, yes.  Yes.  Yes.

20       Q    -- until December?

21       A    That's right.

22       Q    So that's four months, isn't

23   it?  September, October, November, and

# Exhibit G

LAW OFFICES

## HUCKABY SCOTT & DUKES, P.C.

2100 Third Avenue North, Suite 700
BIRMINGHAM, ALABAMA 35203

———

TELEPHONE (205) 251-2300
FACSIMILE (205) 251-6773
WWW.HSDPC.COM

CARTER H. DUKES

WRITER'S DIRECT DIAL: 205-244-2502
E-MAIL ADDRESS: CHD@HSDPC.COM

August 18, 2006

**VIA TELECOPIER AND
U.S. MAIL**

Jerry D. Roberson, Esq.
Roberson & Roberson
8 Office Park Circle
Suite 150
Birmingham, Alabama 35223

> Re:  *Norris Foster v. Mid State Land & Timber Company, Inc.*
> **In the United States District Court For The Middle District of Alabama
> Civil Action No.: CV-05-405**

Dear Jerry:

I am in receipt of your letter of August 17, 2006 concerning the personnel file of Roy Lee. I apologize for not responding to your August 2, 2006 letter, but I thought that we had discussed the issues raised in that letter in subsequent telephone conversations. As we have discussed, Mid State takes the position that Mr. Lee was a manager at Mid State and that it would be ethically improper for you to contact him.

As to the request for his personnel file, Mid State stands by its objections to that request as Mr. Lee is not similarly situated to Plaintiff in this case. Thus, any information that would be contained in his personnel file would not lead to the discovery of admissible evidence as to Mr. Foster's claims to Mid State.

Jerry D. Roberson, Esq.
August 18, 2006
Page 2

I have enjoyed working with you in the past and I value our friendly relationship; however, let me be blunt: there is no good faith basis in fact or in law to suggest that there is a discriminatory basis for the differences in the pay between Mr. Lee and Mr. Norman, and Mid State will aggressively defend itself against any such claims.

Sincerely yours,

Carter H. Dukes

CHD/sdq/38498.1

Exhibit H

LAW OFFICES

## HUCKABY SCOTT & DUKES, P.C.

2100 THIRD AVENUE NORTH, SUITE 700
BIRMINGHAM, ALABAMA 35203

TELEPHONE (205) 251-2300
FACSIMILE (205) 251-6773
WWW.HSDPC.COM

CARTER H. DUKES

WRITER'S DIRECT DIAL: 205-244-2502
E-MAIL ADDRESS: CHD@HSDPC.COM

November 28, 2006

**VIA HAND DELIVERY**
Jerry D. Roberson, Esq.
Roberson & Roberson
8 Office Park Circle
Suite 150
Birmingham, Alabama 35223

> **Re:** *Jeffrey Harris, et al. v. Mid State Land & Timber Company, Inc.*
> **In the United States District Court For The Middle District of Alabama**
> **Civil Action No.: CV-06-00875**

Dear Jerry:

Enclosed is a copy of Defendant's Motion for Sanctions and supporting Memorandum of Law. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Mid State requests that you withdraw your wage claim on behalf of Roy Lee and/or dismiss Roy Lee's claim with prejudice. As you have received the personnel files of Lee and Norman and deposed both Lee and Norman, you are aware of their respective qualifications and experience. There is no basis in law or fact for Lee to claim that he is similarly situated to Norman. If Lee's claim is dismissed at this juncture, Mid State will not seek its attorneys' fees and costs.

The enclosed motion and brief are being served on you in accordance with Rule 5 of the Federal Rules of Civil Procedure. In the event you fail to dismiss in the time allowed by Rule 11 the claims of Roy Lee as contained in the Second Amended Complaint, Defendant Mid State will file the enclosed motion and brief with the Court.

I know that you are competent and conscientious counsel and hope that you will reconsider your prosecution of this claim.

Sincerely yours,

Carter H. Dukes

cc: Albert H. Adams, Jr., Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **JEFFREY HARRIS,** ) | |
| **WILLIE BERNARD MACK,** ) | |
| **DEMETRIUS PARHAM and** ) | |
| **HENRY TARVER,** ) | |
| ) | **CIVIL ACTION NO.:** |
| **Plaintiffs,** ) | **2:06-CV-00875-ID-CSC** |
| ) | |
| **vs.** ) | |
| ) | |
| **MID STATE LAND & TIMBER** ) | |
| **COMPANY, INC., D/B/A** ) | |
| **SEDGEFIELDS PLANTATION,** ) | |
| ) | |

**Defendant.**

## DEFENDANT'S MOTION FOR SANCTIONS

COMES NOW Defendant Mid State Land & Timber Company, Inc., formerly d/b/a Sedgefields Plantation (hereafter referred to as "Defendant" or "Mid State"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, and moves this Court to sanction Plaintiff Roy Lee and his counsel and award those attorneys' fees and costs as this Court may deem just and proper. In support of this Motion, Defendant relies upon the pleadings and Orders filed in this case and the Memorandum of Law filed herewith.

Respectfully submitted,

_____
Carter H. Dukes
Kimberly W. Geisler
Attorneys for Defendant
Mid State Land & Timber Co., Inc.
d/b/a Sedgefields Plantation

**OF COUNSEL:**
HUCKABY SCOTT & DUKES, P.C.
2100 Third Avenue North
Suite 700
Birmingham, Alabama 35203
(205) 251-2300

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Jerry D. Roberson, Esq. (via Hand Delivery)
> Roberson & Roberson
> 8 Office Park Circle
> Suite 150
> Birmingham, Alabama 35223

> Albert H. Adams, Jr., Esq. (via U.S. Mail)
> Irby Law Firm, LLC
> Post Office Box 910
> Eufaula, Alabama 36072

DONE this the _____ day of _____, 200__.

_____
Of Counsel

39265.1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **JEFFREY HARRIS,** | ) | |
| **WILLIE BERNARD MACK,** | ) | |
| **DEMETRIUS PARHAM and** | ) | |
| **HENRY TARVER,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **Plaintiffs,** | ) | **2:06-CV-00875-ID-CSC** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MID STATE LAND & TIMBER** | ) | |
| **COMPANY, INC., D/B/A** | ) | |
| **SEDGEFIELDS PLANTATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

COMES NOW Defendant Mid State Land & Timber Company, Inc., formerly d/b/a Sedgefields Plantation (hereafter referred to as "Defendant" or "Mid State"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, and submits this Memorandum of Law in support of Defendant's Motion for Sanctions as to Plaintiffs' Second Amended Complaint, asserting claims of race discrimination on behalf of Plaintiff Roy Lee ("Lee").

## INTRODUCTION

Defendant Mid State owned, until its sale in May 2006, Sedgefields Plantation ("Sedgefields"). Sedgefields was developed by the Maytag family in the early 1930s

and has a rich tradition for quality quail hunting. Indeed, Sedgefields continues to host the National Amateur Free For All Championship for bird dogs. Despite its fabled quail hunting past and its continued association with national field trials, the Sedgefields property over the past number of years had not been properly cultivated and managed for wild quail covies, resulting in a reduction of its wild quail population. In an effort to remedy this problem, Mid State hired Joel Norman ("Norman") from the Mill Pond Plantation in Thomasville, Georgia, an area renowned around the world for superior quail hunting, to cultivate and manage the land for wild quail habitation and return Sedgefields to its former prominence as a top rate quail hunting plantation. Defendant paid Norman $70,000 to leave Mill Pond and come to Sedgefields. Prior to coming to Sedgefields, Norman had twenty-seven years of bird dog training and handling experience and twenty-four years of experience working on quail hunting plantations, the last seven years of which he was the plantation manager. In addition to his work experience, Norman has a two-year associate degree in wild life management.

Lee, on the other hand, has no education in wild life management and had no prior quail hunting experience until he was hired as a Field Laborer at Sedgefields in September 2000 at $6.00 per hour. While Defendant admits that Lee was trained in quail hunting while he worked at Sedgefields and that he, for a short time during the

2

off-season, managed both quail and deer operations at Sedgefields, Lee's qualifications—as to quail hunting and plantation management—pale in comparison to Norman's educational background and work experience. Despite having this knowledge, Plaintiffs and their counsel amended Plaintiffs' Complaint to add Roy Lee as a Plaintiff and to assert Section 1981 claims of race discrimination based on the wage disparity of Lee and Norman. As there is simply no good faith basis in fact or in law to support Lee's claims, Defendant Mid State is entitled to its fees and costs associated with defending these frivolous claims.

## BACKGROUND FACTS

Lee was employed by Mid State from September 2000 until May 19, 2006, when all of Mid State's employees were terminated upon the sale of Sedgefields Plantation to Tolleson Land & Timber. Prior to coming to work for Defendant, Lee had no experience whatsoever with quail hunting, no managerial experience in hunting operations, and no education in wildlife management. Declaration of Roy Lee, attached hereto as Exhibit A; Application of Roy Lee, attached hereto as Exhibit B. Lee does not have a college degree. Resume of Roy Lee, attached hereto as Exhibit C. Despite Lee's lack of credentials, when Defendant was shorthanded in the summer of 2005, Lee, who was then earning $12.00 per hour, was selected to temporarily oversee Defendant's quail and deer hunting operations. Deposition of

3

David Carroll ("Carroll Dep."), pertinent portions of which are attached hereto as Exhibit D, at 97-98. During that time frame, quail season was over, deer season was over, and Lee's duties involved primarily "summertime maintenance." Carroll Dep. at 97-98. Lee was paid a salary of over $41,000 by Defendant starting in January 2006 and continued to earn over $41,000 when he was placed in charge of solely the deer hunt activities. Plaintiffs' Second Amended Complaint.

In the Second Amended Complaint, Lee claims that he was paid less than Joel Norman ("Norman"), a white employee, because of his race. Unlike Lee, Norman has an associate degree in wildlife technology. Application of Joel Norman, attached hereto as Exhibit E; Deposition of Joel Norman ("Norman Dep."), pertinent portions of which are attached hereto as Exhibit F, at 19. In contrast to Lee, who did not have any personal quail hunting experience, Norman, prior to coming to work for Defendant, had twenty-seven years experience in bird dog training and handling for quail hunts, twenty-four years of experience working on quail hunting plantations, and approximately seven years experience managing a thirty-three hundred acre plantation in Georgia and supervising up to twenty plantation employees. Application of Joel Norman, attached hereto as Exhibit E; Norman Dep. at 37-41. Norman was experienced in cultivating and maintaining a wild quail population and handled this aspect of quail operations for his former employer. Norman Dep. at 39-41.

4

In the summer of 2005, Mid State advertised for an individual with experience

quail hunting and horse and dog handling to manage Defendant's quail operations.

Norman Dep. at 47. With twenty-plus years experience in quail hunting operations

and bird dog hunting, plus seven years experience as a plantation manager for a three

thousand acre plantation in Georgia, Norman more than satisfied Defendant's

requirements for an Quail Operations Manager. Additionally, with his experience in

wild quail operations, Norman was able to institute a wild quail recovery program at

Mid State. Norman Dep. at 69-70. In his deposition, Norman testified that he needed

to be paid $70,000 to be "lured away" from his position of plantation manager in his

hometown in Georgia. Norman Dep. at 50. In September 2005, Norman was hired

by Defendant to manage quail operations at his requested salary of $70,000. Norman

Dep. at 50, 72.

Before filing the Motion to Amend to add Roy Lee as a plaintiff and assert a

claim of wage discrimination based upon the compensation paid to Norman, Lee's

counsel had received the personnel files of Lee and Norman and had deposed Norman

concerning his employment qualifications and employment history. See Response to

Motion to Compel, filed September 9, 2006 in *Foster v. Mid State*, 2:06-CV-00405-

ID-SRW; Order on Motion to Compel, entered on September 14, 2006 in *Foster v.*

*Mid State*, 2:06-CV-00405-ID-SRW (compelling production of portions of Lee's

5

personnel file relating to compensation and qualifications);[1] Norman Dep. at 1, dated

September 8, 2006. In addition, by letter dated August 18, 2006, prior to the

depositions of Defendant's former Plantation Manager David Carroll, Norman, and

Lee, counsel for Defendant forewarned counsel for Plaintiffs that there was no basis

whatsoever for a claim of race discrimination by Lee:

> I have enjoyed working with you in the past and I value our friendly
> relationship; however, let me be blunt: there is no good faith basis in fact
> or in law to suggest that there is a discriminatory basis for the differences
> in pay between Mr. Lee and Mr. Norman, and Mid State will
> aggressively defend itself against any such claims.

Correspondence from counsel for Defendant, dated August 18, 2006, attached hereto

as Exhibit G. Rather than heed the warning and acknowledge the pertinent facts and

law, Plaintiffs and their counsel dove headfirst into this spurious litigation with full

knowledge of the colossal disparity in qualifications between Lee and Norman and

with absolutely no thought as to the ethical constraints of Rule 11.

On November 28, 2006, Defendant served Lee's counsel with a copy of

Defendant's Motion for Sanctions and this supporting Memorandum of Law in

accordance with Rule 5 of the Federal Rules of Civil Procedure and requested that

Lee's counsel voluntarily dismiss Lee's claim. A copy of counsel's correspondence

is attached hereto as Exhibit H. Nevertheless, Lee's counsel continued to prosecute

---

[1] Plaintiffs' counsel in the *Harris* litigation is also counsel in the *Foster* litigation.

this frivolous claim.

## STANDARD FOR AN AWARD OF FEES UNDER FED. R. CIV. P. 11[2]

An attorney who presents to the Court any paper, motion, or pleading certifies

that "to the best of the person's knowledge, information, and belief, formed after an

inquiry reasonable under the circumstances" that there is "evidentiary support" for any

allegations or factual contentions. FED. R. CIV. P. 11(b)(3). Rule 11 sanctions are

proper:

> (1) when a party files a pleading that has no reasonable factual basis; (2)
> when the party files a pleading that is based on a legal theory that has no
> reasonable chance of success and that cannot be advanced as a
> reasonable argument to change existing law; and (3) when the party files
> a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting

*Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir.1995)).

In deciding the propriety of Rule 11 sanctions, the court must first determine

whether the party's claims are objectively frivolous and then, if they are, whether the

---

[2] Rule 11(1)(A) contains a "safe harbor" provision which states that:

a motion for sanctions under this rule . . . shall be served as provided in Rule 5, but
shall not be filed with or presented to the court unless, within 21 days after service
of the motion (or such other period as the court may prescribe), the challenged paper,
claim, defense, contention, allegation, or denial is not withdrawn or appropriately
corrected.

FED. R. CIV. P. 11(1)(A). By serving Lee with a copy of Defendant's Motion and this Memorandum
on November 28, 2006, Defendant complied with the requirements of Rule 11 of the Federal Rules
of Civil Procedure.

7

signatory to the pleading should have been aware that they were frivolous– whether

he would have been aware of the frivolousness if he had made a reasonable inquiry.

*Worldwide Primates*, 87 F.3d at 1254; *Jones*, 49 F.3d at 695.  In determining

reasonableness, the court may consider:    how much time was available for

investigation; whether reliance upon representations of the client was necessary;

whether the paper was based upon a plausible view of the law; and the extent to which

factual development requires discovery.  *Jones*, 49 F.3d at 695.  The relevant time

period is the time the pleading is signed so the Rule 11 inquiry focuses only on the

merits of the pleading from facts known or available to the attorney at the time of

filing.  *Jones*, 49 F.3d at 694-95 (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497,

1507, 1508 (11th Cir.1993)).

## ARGUMENT

In the Second Amended Complaint, Lee asserts a claim of intentional

discrimination with regard to his wages. "To state a prima facie case of intentional

discrimination in compensation, a plaintiff must establish that (1) [he] belongs to a

[protected class]; (2) [he] received low wages; (3) similarly situated comparators

outside the protected class received higher compensation; and (4) [he] was qualified

to receive the higher wage." *Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir.

2004).  There is no dispute that Norman had exponentially more education, quail

8

hunting experience, and plantation management experience than Lee. Accordingly,

Lee cannot show that he and Norman were similarly situated in all respects other than

race and, therefore, cannot establish a prima facie case of wage discrimination. *See*

*Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1273 (11th Cir. 2004) (explaining

that "[w]hen comparing similarly situated individuals to raise an inference of

discriminatory motivation, the individuals must be similarly situated in all relevant

respects besides [the protected trait], since different treatment of *dissimilarly* situated

persons does not violate civil rights laws."); *Cooper*, 390 F.3d at 735-45 (affirming

summary judgment in multi-plaintiff case where plaintiffs alleged wage discrimination

based on race because plaintiffs failed to identify proper comparators and/or failed to

rebut the legitimate reasons – education and prior experience – for wage disparities).

*See also Beard v. 84 Lumber Co.*, No. 06-12220, 2006 WL 2946883, *4 (11th Cir. Oct.

17, 2006) (affirming summary judgment in wage disparity case based on failure to

identify similarly-situated comparator) (table). Because Lee cannot establish a prima

facie case, and the undisputed evidence conclusively precludes any inference that

compensation in this case was based upon race, Lee's claim is objectively frivolous.

Significantly, for purposes of Rule 11, the frivolousness of Lee's claim was

apparent to Lee's counsel before this claim was filed. Lee's counsel was not forced

to rely upon his client's representations as to his comparable qualifications or to file

9

this claim based upon a limited investigation. At the time of filing Lee's claim, counsel had the personnel files of Lee and Norman, including their respective applications for employment. In addition, Lee's counsel had deposed Norman as to his background and qualifications. Lee's counsel knew that Norman had a degree in wildlife technology, experience in cultivating wild quail populations, twenty-plus years more experience in quail operations than Lee, and seven years experience as the manager of an entire plantation (as compared to Lee's single summer season of management), during which time he supervised up to twenty plantation employees. It is difficult to imagine a case where the disparities in qualifications could be more obvious. In sum, there was no reasonable factual basis for Lee's allegations of unlawful wage disparity and no reasonable chance for success on his claim of race discrimination.

Given these facts, all of which were known to Lee's counsel prior to filing this claim, Lee's counsel should have been aware that there was no reasonable basis to file this suit, much less to pursue it after Defendant's request for dismissal. While zealous advocacy is commendable, counsel cannot permit the "objectives of the client to override their ancient duties as officers of the court." *Malautea v. Suzuki Motor Co.*, *Ltd.*, 987 F.2d 1536, 1546-47 (11th Cir. 1993). Counsel have a duty not to "burden the federal courts by pursuing claims that are frivolous on the merits." *Jones v.*

10

*Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). By filing Lee's claim of wage discrimination, Lee's counsel has improperly burdened this Court, caused Defendant to incur significant expense to answer and defend a frivolous claim, and violated the provisions of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, sanctions are warranted. *See, e.g., Crumpton v. St. Vincent's Hosp.*, 174 F.R.D. 493, 496 (N.D. Ala. 1997) (granting motion for Rule 11 sanctions and awarding defendant its attorneys' fees where "the record establishes that plaintiff was presented with the undisputed evidence proving that the employment actions taken by St. Vincent's in relation to her were based on reasons other than race or her disability").

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Mid State Land &

11

Timber Company, Inc. respectfully requests this Court enter an Order finding sanctions are warranted under Rule 11 of the Federal Rules of Civil Procedure and awarding Defendant its reasonable fees and expenses for defending Plaintiff Roy Lee's claim and preparing and filing the instant motion.

Respectfully submitted,

_____

Carter H. Dukes
Kimberly W. Geisler
Attorneys for Defendant
Mid State Land & Timber Co., Inc.
d/b/a Sedgefields Plantation

**OF COUNSEL:**
HUCKABY SCOTT & DUKES, P.C.
2100 Third Avenue North
Suite 700
Birmingham, Alabama 35203
(205) 251-2300

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

12

Jerry D. Roberson, Esq.
Roberson & Roberson
8 Office Park Circle
Suite 150
Birmingham, Alabama 35223

Albert H. Adams, Jr., Esq.
Irby Law Firm, LLC
Post Office Box 910
Eufaula, Alabama 36072

DONE this the _____ day of _____, 200__.

_____
Of Counsel

39270.1

13

# Exhibit A

*Declaration*

My name is Roy Chester Lee. I am over the age of 19 yrs and am suffering from no legal disability. I started working at Sedfields sometime in 2000, earning $6.50/hr. Before working at Sedfields, I worked at Columbus Mills. Before working at sedgefields, I had experience working with horses, tractors, and deer hunting. I did not have any prior experience with Quail hunting. I was trained as to quil hunting at ~~sedgefields~~ by Hunter McDuffie. I later managed the quail hunts and deer hunts.

I later got a raise to $10.00/hr and helped run Sedgefields during a time when there were ~~several~~ managers. Sometimes I was the only One to manage sedgefields for months at a time. I asked to be put on salary and Mid State would not do it. Mid State later put on a salary earning $40,000 a year.

I have personal knowledge of some of Norris Foster's ~~er~~ work performance issues during the first time he worked at Sedgefields. These issues include saying that he fixed the plumbing in the barn when he did not and stealing traps, dog feed, and birds.

In 2005, I hired Norris Foster back

CONFIDENTIAL
DEFENDANT'S PRO

## DECLARATION

at Sedgfields at 6.5 hr. I did not have any
problems with Norris Foster at this time, and I told
him that if he stole anything again I would fire
him immediately. I told him you know what's in your
record and he said "yes." When Joel Norman began
working at Sedgfields, Norris Foster worked under
him. Norris complained about Joel and Joel complained
about Norris. However, I did not personally observe
any performance issue involving Norris Foster. I
have never heard anyone use a racial slur. The
only thing that I have observed that might be discrimination
as to me is my pay difference with Joel Norman
because I was doing both jobs for a period of
time before Joel Norman started working at Sedgfields.
I have not complained to my new employer about this
pay difference. ——————

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Executed this  15th  day of August, 2006

# Exhibit B

# The Peble Corp.

## EMPLOYMENT APPLICATION

*PLEASE PRINT ANSWERS TO THE FOLLOWING QUESTIONS CAREFULLY AND IN INK. TO BE CONSIDERED FOR EMPLOYMENT, ALL ITEMS MUST BE COMPLETED, INCLUDING SIGNATURE. THIS APPLICATION IS VALID FOR 30 DAYS. IF YOU WISH TO BE CONSIDERED FOR EMPLOYMENT AFTER THIS APPLICATION EXPIRES, THEN YOU MUST RE-APPLY.*

NAME *Roy Chester Lee* ____ TELEPHONE NUMBER

ADDRESS _ REDACT ____ Home # ( REDACT

CITY _ REDACT STATE *AL* ZIP_ ____ Daytime # REDACT

SOCIAL SECURITY NUMBER REDACT

### EMPLOYMENT INTERESTS:

Type of work desired *Horse/Dog Trainer/Hunting Guide or Tractor*

Full Time *X* Part Time____ Temporary____

Starting pay expected *9.00 per Hour* Date Available to start *Any time*

---

**IF APPLICABLE:**

Are you willing to travel?____ If yes, what percentage of the time ____

Would you be willing to relocate?____

---

Would you object to: Irregular work hours ☐ YES ☒ NO   Night work ☐ YES ☒ NO

Swing or fluctuating shift work ☐ YES ☒ NO

### SPECIAL SKILLS - COMPLETE IF APPLICABLE TO THE POSITION FOR WHICH YOU ARE APPLYING:

Skill *Horse Training* Experience *9 years*

Skill *License Forklift Operator* Experience *23 years*

Skill *Dog Trainer* Experience *13 years*

Please discuss other specialized skills you feel are pertinent to the job for which you are applying____

### UNITED STATES MILITARY SERVICE STATUS:

Past Military Service - FROM____ , 19____ TO____ , 19____

Branch ____ Rank on discharge ____ Present Status____

List duties and special training

CONFIDENTIAL DEFENDANT'S PROD

**EDUCATION:**

| | NAME OF SCHOOL AND LOCATION | MAJOR AREA OF STUDY and/or DEGREE RECEIVED |
|---|---|---|
| High School | Bullock County High School Union Springs, AL | Science, Math, History |
| Jr. College, College, or University | | |
| Technical or Trade Schools | | |

Honors and Scholarships _____

Grade Average (approx.)  High School ___X___ College _____ Other _____

**General Information:**

Are you legally authorized to work in the United States?  ☒ YES  ☐ NO  If not, what is your present status and do you have a work visa? _____

Have you ever been convicted of a crime?  ☐ YES  ☒ NO  If yes, please explain. Give dates, charge, penalty assessed or disposition.  Conviction will not necessarily bar employment.  Consideration will be given to the nature of the crime, age at the time of offense, rehabilitation and the position for which you are applying.

_____
_____

Have you ever been discharged from a job?  ☐ YES  ☒ NO  If yes, please explain _____

_____
_____
_____

Have you ever been bonded?  ☐ Yes  ☒ NO  If yes, when and in what job. _____

_____
_____
_____

0174    CONFIDENTIAL DEFENDANT'S PROD

Do you have a valid, active driver's license?  ☒ YES  ☐ NO  Issuing State _____

Drivers License ____ REDACT ____ _____ Class of License _____

How long have you been a resident of this City __41 years__ State __41 years__

How long at your present address? __40 years__ Give previous address if less than one year at present

address _____

Are you over the age of 18?  ☒ YES  ☐ NO  If hired can you provide proof of age?  ☐ YES  ☐ NO

**EMPLOYMENT DATA:**

Have you ever been employed by this company before?  ☐ YES  ☒ NO   If yes, please give dates of

employment, position employed, and reason for leaving _____

_____

_____

Please list all jobs (if not listed above), beginning with your present or last employer and working backwards
to earlier positions. Account for all periods, including unemployment, self-employment, and military service.
If additional space is needed, please list on a separate page or on the back of this form.

#1 DATES - From __July 9, 1978__ to __July 14, 00__

Company Name, City, and State __Beaulieu of America__

Supervisor's Name/Title __Lawrence Penn__    SALARY - Start __$9.70__ End __13.26 per h__

Phone # __738-4600__ May we contact? __yes__ Final position with the company __Supervisor Trainee__

Reason for leaving? __Plant Closed__

DATES - From __Summer 75/76__ to __to Summer 1977__

Company Name, City, and State __Welsh Company of the South__

Supervisor's Name/Title __M. Driggers__    SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company __Assembly Worker__

Reason for leaving? __Plant Closed__

#3 DATES - From _____ to _____

Company Name, City, and State __Chris Caldwell Logging Company__

Supervisor's Name/Title __Chris Caldwell / Deceased__ SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company __Truck Driver,__
__Skidder / Tractor__
__Operator__

Reason for leaving?

Company Name, City, and State_____

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone #_____ May we contact?_____Final position with the company_____

Reason for leaving?_____

#5 DATES - From_____to _____

Company Name, City, and State_____

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone #_____May we contact?_____Final position with the company_____

Reason for leaving?_____

## PERSONAL REFERENCES (Not Former Employers or Relatives)

| Name and Occupation | Address | Phone Number |
|---|---|---|
| Hill + Hill Grocery Milton Hill - Owner | Hwy, 82 E. Miday, Alabama 36053 | 529 - 3700 |
| Bill Davis Grocery Bill Davis - Owner | Rt. 2 Midway, Alabama | 529 - 9859 |
| Sherman Bowens Grocery Sherman Bowens - Owner | Rt. 2 Midway, Alabama 36053 | 529 - 3327 |

The Pable Corp. is an Equal Opportunity Employer which endeavors, pursuant to all applicable Federal and State Laws, to give every applicant for employment, and every employee, equal consideration in all matters relating to employment, without regard race, color, sex, age, religion, national origin, citizenship and disability.

my signature below, I certify the facts set forth in this application for employment are true and complete to the best of my knowledge and belief, and I agree you may investigate my statements. I agree to permit all past employers to give any information concerning me and release them from liability in furnishing such information. I understand that my employment and, if employed, my continued employment, is conditional upon my participating in and clearing such security examinations or

investigations as may be deemed advisable by the company. I agree to participate in such examinations and investigations when requested to do so by the company, and agree that the company shall be held harmless and free from liability in connection with any security examination or investigation in which I may be involved.

I understand, if employed, false statements on this application shall result in disciplinary action up to and including discharge. Also if employed, I understand that it is the company's policy that all employees who do not have a written employment contract with the company for a specific, fixed term of employment are employed at the company's will. I understand that I would be subject to termination at any time, for any reason, with or without cause or notice.

Roy Chester Lee
Applicant's Signature

August 10, 2000
Date Signed

0176 CONFIDENTIAL DEFENDANT'S PROD

Exhibit C

Roy Chester
7375
Hwy. 51 South
Midway, Alabama 36053
(334) 529-3965

**Objective:**          Horse/ Dog Trainer/ Hunting Guide

                        Beaulieu of America
**Experience:**         Supervisor: Lawrence Penn
                        Hicks Ind. Park
                        Union Springs, Alabama 36089
                        Job Title: Supervisor Trainee
                        Date Hired : 7/ 9 / 99
                        Job End : 7 / 14 / 00  Plant closed
                        (334) 738 – 4800

                        Welsh Company of The South
                        Supervisor : M. Driggers
                        Welsh Street
                        Union Springs, Alabama 36089
                        Job Title : Assembly Line Worker
                        Summer worker : 1975 / 76 / 77
                        Plant : Closed

                        Chris Caldwell Logging Company
                        Supervisor : Chris Caldwell / Deceased
                        Midway, Alabama 36053
                        Job Title : Truck Driver / Skidder / Tractor  Operator

Edcaton:

                        Bullock County High School
                        Sardis Road
                        Union Springs, Alabama
                        (334 ) 738 – 2198

                        Sparks State Technnical College
                        Eufaula, Alabama
                        CPR  Training Course / 1998
                        Computer Operator / 1998

0177    CONFIDENTIAL
        DEFENDANT'S PROD

Training:         Machine Overhauling
                    License Fork Lift Operator
                    Machine Technician
                    Supervisor Trainee / 3 years


References:      Lawrence Penn
                    Plant Manager
                    Union Springs, AL 36089
                    (334) 738-4759 (H)
                    (334) 738-4600 (W)

                    Kathy Gilmore
                    Human Resources Manager
                    115 Industrial Park
                    Eufaula, AL 36027
                    (334) 687-2091 ext. 221

                    Milton Hill
                    Hill & Hill Grocery
                    Hwy. 82 E.
                    Midway, AL 36053
                    (334) 529-9859

0178  CONFIDENTIAL
DEFENDANT'S PROD

# Exhibit D

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

CIVIL ACTION NUMBER

2:06-CV-00405-ID-SRW

NORRIS FOSTER,

    Plaintiff,

vs.

MID STATE LAND & TIMBER COMPANY, INC.,
d/b/a SEDGEFIELDS PLANTATION,

    Defendant.

THE VIDEOTAPED

DEPOSITION TESTIMONY OF:

DAVID CARROLL

1:29

September 8, 2006

    p.m.

COURT REPORTER:

Gwendolyn P. Timbie, CSR



Page 97

1        Q     Okay.  And, in fact, Roy --

2    before Joel was hired, Roy was doing both

3    jobs.  And when I say "both jobs," he was

4    running the deer and the quail, wasn't

5    he?

6        A     I will -- I would say this in

7    an answer:  In that when I was hired, I

8    was told that Ms. Davidson, who was the

9    general manager, and her husband, who was

10   working there, was -- he and her husband

11   was, more or less, in charge of -- over

12   the deer hunting and stuff.

13       The time that, quote, unquote, Roy

14   was in charge of all of it was a time when

15   we weren't actively participating in all

16   -- in any of those activities that were

17   ongoing.  Quail season was over with.

18   Deer season was over with.  And for that

19   time frame that he was, quote, unquote, in

20   charge of the plantation, it was,

21   basically, summertime maintenance and

22   things of that nature.  Not to discredit

23   his -- what Roy does for me.  He's a very

Page 98

1    valuable employee.

2         Q    Okay.  Well, that -- you're

3    saying that Roy was never over both of the

4    hunting operations during the season; is

5    that --

6         A    Not to my -- not to my

7    knowledge.

8         Q    I mean, that -- but in

9    fairness to that statement -- and I don't

10   disagree with what you say.  But in

11   fairness, you weren't there during the

12   hunting season --

13        A    That's correct.

14        Q    -- prior to that?

15        A    That is correct.

16        Q    So --

17        A    Yeah.

18        Q    Is that fair?

19        A    That is fair.

20        Q    Okay.  Now, did -- was there

21   ever any issue, that you were made aware

22   of, about the -- the employees getting off

23   early at homecoming?

Exhibit E

# The Peble Corp.

## EMPLOYMENT APPLICATION

*PLEASE PRINT ANSWERS TO THE FOLLOWING QUESTIONS CAREFULLY AND IN INK. TO BE CONSIDERED FOR EMPLOYMENT, ALL ITEMS MUST BE COMPLETED, INCLUDING SIGNATURE. THIS APPLICATION IS VALID FOR 30 DAYS. IF YOU WISH TO BE CONSIDERED FOR EMPLOYMENT AFTER THIS APPLICATION EXPIRES, THEN YOU MUST RE-APPLY.*

NAME __Joel S. Norman Jr.__    TELEPHONE NUMBER

ADDRESS __22137 Highway 29 N.__    Home # __(334) 738-5379__

CITY __Union Springs__ STATE __AL__ ZIP __36089__    Daytime # (    )    -

SOCIAL SECURITY NUMBER __252 - 86 - 2861__

**EMPLOYMENT INTERESTS:**

Type of work desired _____

Full Time __✓__ Part Time _____ Temporary _____

Starting pay expected _____ Date Available to start _____

**IF APPLICABLE:**

Are you willing to travel? _____ If yes, what percentage of the time _____

Would you be willing to relocate? __yes__ _____

Would you object to:  Irregular work hours  ☐ YES  ☒ NO    Night work  ☐ YES  ☒ NO

Swing or fluctuating shift work  ☐ YES  ☒ NO

**SPECIAL SKILLS - COMPLETE IF APPLICABLE TO THE POSITION FOR WHICH YOU ARE APPLYING:**

Skill __Bird Dog Training & Handling__ Experience __27 yrs__

Skill __Plantation Mng__ Experience __2 yrs__

Skill _____ Experience _____

Please discuss other specialized skills you feel are pertinent to the job for which you are applying _____

**UNITED STATES MILITARY SERVICE STATUS:**

Past Military Service - FROM _____ TO _____

Branch _____ Rank on discharge _____ Present Status _____

List duties and special training

CONFIDENTIAL
DEFENDANT'S PROD.    0078

**EDUCATION:**

| | NAME OF SCHOOL AND LOCATION | MAJOR AREA OF STUDY and/or DEGREE RECEIVED |
|---|---|---|
| High School | TCCHS Thomasville GA | High School Diploma |
| Jr. College, College, or University | Abraham Baldwin Agricultural College Tifton, GA | Associate Degree in Wildlife Technology |
| Technical or Trade Schools | | |

Honors and Scholarships _____

Grade Average (approx.)   High School _____ College _____ Other _____

**General Information:**

Are you legally authorized to work in the United States?   ☑ YES  ☐ NO  If not, what is your present status and

do you have a work visa? _____

Have you ever been convicted of a crime?  ☐ YES  ☑ NO  If yes, please explain. Give dates, charge, penalty assessed or disposition. Conviction will not necessarily bar employment. Consideration will be given to the nature of the crime, age at the time of offense, rehabilitation and the position for which you are applying.

_____

_____

Have you ever been discharged from a job?  ☐ YES  ☑ NO  If yes, please explain _____

_____

_____

Have you ever been bonded?  ☐ Yes  ☑ NO   If yes, when and in what job _____

_____

_____

CONFIDENTIAL DEFENDANT'S PROD.  0079

Do you have a valid, active driver's license?   ☑ YES   ☐ NO   Issuing State ___GA___

Drivers License # __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_____   Class of License _____C_____

Iow long have you been a resident of this City ____20_____ State ___GA___

How long at your present address? __20_____ Give previous address if less than one year at present

address_____

Are you over the age of 18?   ☑ YES   ☐ NO   If hired can you provide proof of age?   ☑ YES   ☐ NO

**EMPLOYMENT DATA:**

Have you ever been employed by this company before?   ☐ YES   ☑ NO   If yes, please give dates of

employment, position employed, and reason for leaving _____

_____

_____

Please list all jobs (if not listed above), beginning with your present or last employer and working backwards
to earlier positions. Account for all periods, including unemployment, self-employment, and military service.
If additional space is needed, please list on a separate page or on the back of this form.

#1 DATES - From __Aug 1984__ to __Sept 2005__

Company Name, City, and State __Millpond Plantation, Thomasville, GA__

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company _____

Reason for leaving? _____

#2 DATES - From __Aug 1982__ to __Aug 1984__

Company Name, City, and State __Gillionville Plantation, Albany, GA__

Supervisor's Name/Title                                   SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company _____

Reason for leaving? _____

#3 DATES - From _____ to _____

Company Name, City, and State _____

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone # _____ May we contact? _____ Final position with the company _____

Reason for leaving? _____

CONFIDENTIAL
DEFENDANT'S PROD.   0080

Company Name, City, and State_____

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone #_____ May we contact?_____Final position with the company_____

Reason for leaving?_____

#5 DATES - From_____to_____

Company Name, City, and State_____

Supervisor's Name/Title _____ SALARY - Start _____ End _____

Phone #_____May we contact?_____Final position with the company_____

Reason for leaving?_____

## PERSONAL REFERENCES (Not Former Employers or Relatives)

| Name and Occupation | Address | Phone Number |
|---|---|---|
| | | |
| | | |
| | | |

The Pebla Corp. is an Equal Opportunity Employer which endeavors, pursuant to all applicable Federal and State Laws, to give every applicant for employment, and every employee, equal consideration in all matters relating to employment, without regard to race, color, sex, age, religion, national origin, citizenship and disability.

By my signature below, I certify the facts set forth in this application for employment are true and complete to the best of my knowledge and belief, and I agree you may investigate my statements. I agree to permit all past employers to give any information concerning me and release them from liability in furnishing such information. I understand that my employment and, if employed, my continued employment, is conditional upon my participating in and clearing such security examinations or investigations as may be deemed advisable by the company. I agree to participate in such examinations and investigations when requested to do so by the company, and agree that the company shall be held harmless and free from liability in connection with any security examination or investigation in which I may be involved.

I understand, if employed, false statements on this application shall result in disciplinary action up to and including discharge. Also if employed, I understand that it is the company's policy that all employees who do not have a written employment contract with the company for a specific, fixed term of employment are employed at the company's will. I understand that I would be subject to termination at any time, for any reason, with or without cause or notice.

_____
Applicant's Signature

9 - 1 - 0 5
_____
Date Signed

CONFIDENTIAL
DEFENDANT'S PROD.    0081

# Exhibit F

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


CIVIL ACTION NUMBER

2:06-CV-00405-ID-SRW


NORRIS FOSTER,

    Plaintiff,

vs.

MID STATE LAND & TIMBER COMPANY, INC.,
d/b/a SEDGEFIELDS PLANTATION,

    Defendant.



THE VIDEOTAPED

DEPOSITION TESTIMONY OF:

JOEL NORMAN



September 8, 2006

9:11

    a.m.


COURT REPORTER:

Gwendolyn P. Timbie, CSR

COPY

Page 19

1          Q      Where did you attend college?

2          A      Abraham Baldwin Agriculture

3    College, Tifton.

4          Q      Okay.  And did you -- is that

5    a junior college?

6          A      It -- it is, yes.  About the

7    same thing.

8          Q      I mean, it -- they have

9    two-year degrees?

10         A      Two-year degrees.  And you --

11   or you can take your first two years there

12   and move on, you know.

13         Q      Okay.

14         A      It's also -- transfer.

15         Q      And so you got an associate

16   degree, a two-year degree --

17         A      That's right.

18         Q      -- in wildlife technology --

19         A      That's right.

20         Q      -- is that correct?  When did

21   you finish that college?

22         A      I think my -- I actually may

23   have received my diploma in '86, but I had

Page 37

1     salary?

2          A     Yes, sir.

3          Q     How much was the salary?

4          A     I don't remember.

5          Q     Do they have any black

6     employees there?

7          A     Yes, sir.

8          Q     All right.  And who -- who

9     would you say would have been in charge of

10    that?

11         A     A guy by the name of Jesse

12    Jackson.

13         Q     Was he white or black?

14         A     He was white.

15         Q     Is he still living?  Do you

16    know?

17         A     I think so.

18         Q     Do you ever talk to him?

19         A     Not in the last couple of

20    years.

21         Q     All right.  Why did you leave

22    there in '84?

23·        A     I had an opportunity to work

Page 38

1    in my hometown, on a -- on a plantation

2    there.

3        Q    At Millpond?

4        A    At Millpond.

5        Q    Who owns Millpond Plantation?

6        A    It's now owned by the

7    Sedgewick -- Sedgewick family.

8        Q    Well, when you worked there,

9    who owned it?

10       A    The Sedgewick family owned it

11   for the last year.  The Perry family owned

12   it for the years prior to that.  They're

13   all first cousins.  I mean, it's all in

14   the same family, basically.  But...

15       Q    Okay.  Now, what was your job

16   at Millpond?

17       A    Well, for the first -- I don't

18   know.  First period, it was just a dog

19   trainer.  Title was a dog trainer, but I

20   did have a -- the responsibility of

21   looking after the quail woods.  In the --

22   the last, approximately, six years, I was

23   the manager and the dog trainer.

Page 39

1      Q      Last six years, you were

2  manager?

3      A      Manager and dog trainer, with

4  the exception of -- the last year, I

5  brought in a -- a guy to -- to take the

6  dog -- the actual hunts out, and started

7  training him and getting him ready to do

8  that.  I had too much responsibility.

9      Q      Okay.  Well, as -- as a

10 manager at Millpond, did you hire and fire

11 employees?

12     A      Yes, sir.

13     Q      And you -- you worked there as

14 a manager for six or seven years; right?

15     A      That's right.

16     Q      So I -- how many employees did

17 you have?

18     A      It -- it varied from -- from

19 eight to twenty.  Seasonal.  We had some

20 seasonal help, and it fluctuated some.

21     Q      Did -- did they have any other

22 aspect to their operation other than the

23 quail hunting?  Did they farm or

Page 40

1    anything?

2        A    We -- just a little bit.  Not

3    a lot.  Just -- we -- we did a little bit

4    once or twice.

5        Q    How many acres did they have?

6        A    The property that I was

7    responsible for was thirty-three hundred,

8    plus another -- approximately a thousand

9    that was neighbor's property -- family

10   property that we managed quail on.

11       Q    Did y'all set birds out?

12       A    No, sir.

13       Q    It was a -- it was a wild

14   quail?

15       A    All wild quail.

16       Q    Okay.  So you have to manage

17   that population --

18       A    Yes, sir.

19       Q    -- is that right?  Is that

20   what you're talking about, managing the

21   quail woods?

22       A    Yes, sir.

23       Q    How do you do that?

Page 41

1          A      Well, it's -- that's not

2     easy.  That's not a question I can answer

3     just in a few minutes.  Do you want to

4     hear it?

5          Q      Well, I -- do you -- do you

6     feed them?

7          A      We do feed them.

8          Q      Okay.

9          A      You do feed them.

10         Q      Okay.

11         A      You feed them.  You burn

12    properly.  You -- you manicure the woods.

13    You trap -- you have it trapped.

14         Q      Do you provide cover for them?

15         A      We do.

16         Q      And --

17         A      That's -- that's included in

18    burning properly.

19         Q      Okay.  And -- and so it's a

20    year-round process --

21         A      Yes, sir.

22         Q      -- of making conditions

23    optimum for their population.

Page 47

1    was your hometown and your wife is from

2    there, why would you leave Millpond

3    Plantation?

4          A    Money.

5          Q    Well, how much money were you

6    making as a manager at Millpond?

7          A    Fifty thousand dollars a year.

8          Q    And somebody -- how did you

9    get in touch with Mid State Land and

10   Timber?

11         A    There was an ad in the paper,

12   and --

13         Q    What paper?

14         A    Thomasville Times-Enterprise.

15         Q    What did it say?

16         A    His -- something along the

17   lines of historical Sedgefields Plantation

18   is looking for someone with experience

19   with quail -- with equine -- equine and --

20   and dogs.  I don't remember exactly.  But

21   responsible for the dogs and the horses

22   and the hunting.

23         Q    Did it list a salary?

Page 50

1           A     David.

2           Q     And how much were you

3     making -- take to lure you away from your

4     hometown in Thomasville, Georgia?

5           A     Seventy thousand dollars.

6           Q     Seventy thousand dollars.

7     Plus what?  A truck?

8           A     All the benefits that I was

9     receiving, basically, in Thomasville.

10    Truck.

11          Q     Okay.  Does --

12          A     Insurance, house.

13          Q     Does Mid States provide you

14    with a vehicle?

15          A     They do.

16          Q     What kind of vehicle?

17          A     It's a Chevrolet -- four-wheel

18    drive, Chevrolet truck.

19          Q     What year?

20          A     I'm not -- I'm not for sure.

21    I would probably say an '04 or somewhere

22    along in there.  I'm not sure.

23          Q     Air conditioned?

Page 69

1  these people have him assigned to do.

2      Q    In fact, Roy Lee was doing

3  your job before you were hired, wasn't he?

4      A    No, sir.

5      Q    He wasn't?

6      A    No, sir.

7      Q    He wasn't taking people on

8  quail hunts?

9      A    He was putting birds out and

10 going and getting them and taking them

11 right back and shooting them, but he

12 wasn't doing what I do.

13     Q    Oh.  What is it that you do

14 that Roy wasn't doing?

15     A    Well, I'm not totally familiar

16 with everything Roy did.  But we have a

17 wild -- we have a wild quail recovery

18 program in place.  That wasn't being

19 done.

20     Q    What does that mean?  Tell me

21 what you mean about a "wild quail recovery

22 program."

23     A    Well, we're -- we're managing

Page 70

1    for wild quail on some of the property,

2    and we -- and we initiate an early release

3    program -- quail program on -- on another

4    portion of the property.

5        Q      What is an "early release

6    program"?  Is that where you set --

7        A      Set them out --

8        Q      -- your birds out?

9        A      -- a couple of months before

10   hunting season and try to carry them

11   through the hunting season.  Basically,

12   just trying to manage that population of

13   released birds.

14       Q      Now, that ain't setting them

15   out to shoot them, is it?

16       A      It is releasing them --

17   pre-releasing them months prior to hunting

18   them, to -- to simulate wild-bird type

19   hunting.  Different kind of dog.  Dog

20   steady to winging shot, not -- not dogs

21   flushing birds for you.

22       Q      Anything else you say you're

23   doing that Roy Lee didn't do?

**American Court Reporting**
**toll-free (877) 320-1050**

Page 72

1   that was a guide?

2      A   I was the only person that was

3   a guide.

4      Q   Okay.  So when Norris

5   Foster -- and you worked with Norris from

6   the time of your hiring in September until

7   he was fired on December the 29th;

8   correct?

9      A   Pretty much.  The -- the first

10   few weeks was sort of a -- trying to

11   figure out who-could-help-who deal.  So I

12   can't remember exactly when he became

13   strictly to my crew, you know.

14      Q   Okay.  Well, what I'm saying

15   is, your time there at Sedgefields only

16   overlapped from September to the end of

17   December; isn't that fair?  From the time

18   of your hiring --

19      A   That's right, yes.  Yes.  Yes.

20      Q   -- until December?

21      A   That's right.

22      Q   So that's four months, isn't

23   it?  September, October, November, and

Exhibit G

LAW OFFICES

## HUCKABY SCOTT & DUKES, P.C.

2100 Third Avenue North, Suite 700
BIRMINGHAM, ALABAMA 35203

TELEPHONE (205) 251-2300
FACSIMILE (205) 251-6773
WWW.HSDPC.COM

CARTER H. DUKES

WRITER'S DIRECT DIAL: 205-244-2502
E-MAIL ADDRESS: CHD@HSDPC.COM

August 18, 2006

**VIA TELECOPIER AND
U.S. MAIL**

Jerry D. Roberson, Esq.
Roberson & Roberson
8 Office Park Circle
Suite 150
Birmingham, Alabama 35223

> **Re:** *Norris Foster v. Mid State Land & Timber Company, Inc.*
> **In the United States District Court For The Middle District of Alabama**
> **Civil Action No.: CV-05-405**

Dear Jerry:

I am in receipt of your letter of August 17, 2006 concerning the personnel file of Roy Lee. I apologize for not responding to your August 2, 2006 letter, but I thought that we had discussed the issues raised in that letter in subsequent telephone conversations. As we have discussed, Mid State takes the position that Mr. Lee was a manager at Mid State and that it would be ethically improper for you to contact him.

As to the request for his personnel file, Mid State stands by its objections to that request as Mr. Lee is not similarly situated to Plaintiff in this case. Thus, any information that would be contained in his personnel file would not lead to the discovery of admissible evidence as to Mr. Foster's claims to Mid State.

Jerry D. Roberson, Esq.
August 18, 2006
Page 2

I have enjoyed working with you in the past and I value our friendly relationship; however, let me be blunt: there is no good faith basis in fact or in law to suggest that there is a discriminatory basis for the differences in the pay between Mr. Lee and Mr. Norman, and Mid State will aggressively defend itself against any such claims.

Sincerely yours,

Carter H. Dukes

CHD/sdq/38498.1

Exhibit H

LAW OFFICES

## HUCKABY SCOTT & DUKES, P.C.

2100 THIRD AVENUE NORTH, SUITE 700
BIRMINGHAM, ALABAMA 35203

TELEPHONE (205) 251-2300
FACSIMILE (205) 251-6773
WWW.HSDPC.COM

CARTER H. DUKES

WRITER'S DIRECT DIAL: 205-244-2502
E-MAIL ADDRESS: CHD@HSDPC.COM

November 28, 2006

**VIA HAND DELIVERY**
Jerry D. Roberson, Esq.
Roberson & Roberson
8 Office Park Circle
Suite 150
Birmingham, Alabama 35223

> **Re:** *Jeffrey Harris, et al. v. Mid State Land & Timber Company, Inc.*
> **In the United States District Court For The Middle District of Alabama**
> **Civil Action No.: CV-06-00875**

Dear Jerry:

Enclosed is a copy of Defendant's Motion for Sanctions and supporting Memorandum of Law. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Mid State requests that you withdraw your wage claim on behalf of Roy Lee and/or dismiss Roy Lee's claim with prejudice. As you have received the personnel files of Lee and Norman and deposed both Lee and Norman, you are aware of their respective qualifications and experience. There is no basis in law or fact for Lee to claim that he is similarly situated to Norman. If Lee's claim is dismissed at this juncture, Mid State will not seek its attorneys' fees and costs.

The enclosed motion and brief are being served on you in accordance with Rule 5 of the Federal Rules of Civil Procedure. In the event you fail to dismiss in the time allowed by Rule 11 the claims of Roy Lee as contained in the Second Amended Complaint, Defendant Mid State will file the enclosed motion and brief with the Court.

I know that you are competent and conscientious counsel and hope that you will reconsider your prosecution of this claim.

Sincerely yours,

Carter H. Dukes

cc: Albert H. Adams, Jr., Esq.