Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY  AL  36104-4055

---

August 07, 2008

**Appeal Number: 07-14903-HH**
Case Style: Jeffrey Harris v. Mid-State Land & Timber Company
District Court Number:  06-00875 CV-D

TO:   Debra P. Hackett

CC:   Jerry D. Roberson

CC:   Kimberly Wood Geisler

CC:   Carter H. Dukes

CC:   Hon. Charles S. Coody

CC:   Administrative File

# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

August 07, 2008

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

**Appeal Number: 07-14903-HH**
Case Style: Jeffrey Harris v. Mid-State Land & Timber Company
District Court Number: 06-00875 CV-D

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:

Bill of Costs

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
## For the Eleventh Circuit

No. 07-14903

District Court Docket No.
06-00875-CV-D

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jul 9, 2008

THOMAS K. KAHN
CLERK

ROY LEE,

>    Plaintiff-Appellant
>    Cross-Appellee,

NORRIS FOSTER,
JEFFERY HARRIS,
WILLIE BERNARD MACK,
DEMETRIUS PARHAM,
HENRY TARVER,

>    Plaintiffs,

versus

MID-STATE LAND & TIMBER COMPANY, INC.,
d.b.a. Sedgefields Plantation,

>    Defendant-Appellee
>    Cross-Appellant.

A True Copy – Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
----------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
AUG 0 7 2008
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:     July 9, 2008
For the Court:    Thomas K. Kahn, Clerk
By:    Harper, Toni

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 9, 2008
THOMAS K. KAHN
CLERK

No. 07-14903
Non-Argument Calendar

D. C. Docket No. 06-00875-CV-D

ROY LEE,

Plaintiff-Appellant
Cross-Appellee,

NORRIS FOSTER,
JEFFERY HARRIS, et al.,

Plaintiffs,

versus

MID-STATE LAND & TIMBER COMPANY, INC.,
d.b.a. Sedgefields Plantation,

Defendant-Appellee
Cross-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(July 9, 2008)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Roy Lee appeals from the district court's grant of summary judgment in favor of Mid-State Land and Timber Company, Inc. ("Mid-State"), d/b/a Sedgefields Plantation, in an employment discrimination lawsuit filed pursuant to 42 U.S.C. § 1981. On appeal, Lee contends that the district court erred in finding that he failed to establish a prima facie case of race-based wage discrimination, considering that he was the only black to hold a management position at Mid-State and the only manager to be paid hourly, although he later became salaried. Lee argues that he was similarly situated to Joel Norman, a white male, who worked as quail operations manager, and was paid $70,000 per year, provided with housing, a company truck, and insurance. Lee also states that the district court erred by finding that the reasons proffered by Mid-State for its compensation decisions were not pretextual. Mid-State, which cross-appeals, argues that the district court erred in denying its motion for sanctions under Federal Rule of Civil Procedure 11. We conclude that the district court correctly ruled that Lee failed to establish a prima facie case of racially disparate pay because he presented no evidence of similarly situated coworkers who were treated more favorably. The district court also correctly found that even if Lee had established a prima facie case, he could

2

not establish that Mid-State's legitimate, nondiscriminatory reasons for its

compensation decisions were pretextual. Because Lee's claim was not frivolous

with respect to all comparators, the district court did not abuse its discretion by

denying Mid-State's motion for sanctions under Rule 11. Accordingly, we

AFFIRM the judgment against Lee and against Mid-State (as to its motion for

sanctions). We DENY Mid-State's motion to strike Lee's reply brief.

## I. **BACKGROUND**

Lee, a black male, along with other plaintiffs, brought the present suit in

2006 against Mid-State, d/b/a Sedgefields Plantation, a hunting lodge where

sportsmen paid to engage in quail or deer hunting. In a second amended

complaint, he alleged that he was first employed by Mid-State in 2000 as a general

laborer. He was paid $10.00 per hour to work as a foreman over the deer and quail

hunting operations. Later, he worked as deer operations manager and was paid an

annual salary of $41,000 per year and received a vehicle for his use and gasoline

for work related activities, although he did not receive lodging on the property.

Lee contended that Mid-State paid him unequally based on his race. According to

Lee, Mid-State hired Joel Norman, a white male, in September 2005, to work as

quail operations manager, paid him $70,000 per year, and provided him with

housing and a company truck, even though Lee had performed that job and other

3

duties. Based on this and other events, Lee requested back pay, compensatory and punitive damages, injunctive relief, and a declaratory judgment.

Mid-State answered and denied liability to Lee and the other plaintiffs. Mid-State admitted employing Lee from September 2000 until May 2006, first as a general laborer and then as foreman or manager over all hunting operations, that he had been paid $41,633.49 per year starting on 1 January 2006, and that he received use of a company vehicle and gasoline for work-related activities. Mid-State also admitted hiring Joel Norman in September 2005 as the quail operations manager, paying him $70,000 per year, giving him a truck and housing on the property, and that Norman performed some of the same job duties previously performed by Lee. Nevertheless, Mid-State asserted that all actions with regard to Lee were based on legitimate, non-discriminatory, non-retaliatory considerations.

After discovery, Mid-State moved for summary judgment. With regard to Lee, Mid-State argued that it hired Norman to increase its wild quail population and restore Sedgefields's reputation. According to Mid-State, Lee could not establish a prima facie case of racially disparate pay because he was not similarly situated to Norman, considering education and experience involving quail hunting, bird dog training, and plantation management. For example, Norman's experience helped him to implement a wild quail recovery program at Sedgefields. Even

4

assuming Lee could establish a prima facie case, Mid-State argued that it had

legitimate, nondiscriminatory reasons for the difference in Lee and Norman's pay,

namely that Norman had considerably more education and quail hunting operations

and plantation management experience than Lee, Mid-State wanted to restore the

wild quail population and return Sedgefields to its former status, and Norman

could not be lured away from his previous job for less than $70,000 per year. In

support, Mid-State submitted the affidavit of David Carroll, excerpts from

Norman's deposition and Lee's two depositions, the job applications of Norman

and Lee, Lee's sworn declaration, and Lee's resume.

Lee opposed Mid-State's motion for summary judgment. He contended that

even though he was in charge of deer and quail hunting operations, he was the only

black manager in Mid-State's history and the only manager to be paid by the hour.[1]

When he finally received a $41,000 per year salary, he actually made less money

than before because he was not compensated for overtime. With respect to his

qualifications, Lee described himself as an avid deer and raccoon hunter who had

been working with hunting dogs his entire life. Lee was originally assigned to

work in the quail hunting crew as a back-up man responsible for holding horses,

---

[1] Although Lee argues that he was the only manager to be paid hourly and every white
employee made $8.00 or more per hour and every black made $7.00 or less per hour, the record
cites provided by him contradict these statements. E.g., Dist. Dkt. No. 45, Exh. 4 at 22-26, Exh.
21.

picking up birds, assisting guests, and serving as the guide on numerous quail hunts. He stated that he had put out birds before a hunt and also pre-released wild birds several months in advance of hunting season. Lee also was familiar with preparing land for hunting, providing cover for the birds, general maintenance operations of a hunting lodge, and operating heavy equipment, such as back-hoes, bulldozers, and tractors. Lee stated that he worked more than 3,900 hours in 2004, even though he earned only $45,000, because he had tremendous responsibilities.

Lee contended that he was similarly situated to Norman because they were employed in equal jobs, both of which were supervisory with the same number of subordinates; yet, Norman received tens of thousands more in compensation, housing, and health insurance. He conceded that Norman had more education and experience, but contended that Norman did not have more hunting experience and Lee worked far more hours. Dist. Dkt. No. 44 at 9-10. Lee did not claim that they should have been paid equally, but stated that the large discrepancy in compensation showed discrimination against blacks. Id. at 10. Lee argued that Norman's degree was not a legitimate basis for the pay disparity, considering that Mid-State paid a wildlife biologist with a masters degree in timber management less than Norman in that the wildlife biologist made $75,000 a year and was not provided housing. Id.

6

In support, Lee submitted his depositions, Carrroll's deposition testimony, the sworn declarations of Lee and Norris Foster, Norman's personnel file and application, his own personnel file and application, the application and wages of William Hubbard, Joseph May, Forest Hamm, Jeffrey Harris, and William Mack, 2003-2004 and 2005-2006 employee wage charts, Foster's wages, Corey Balkcom's application, and a 2006 organizational chart for Sedgefields Plantation.

The district court granted Mid-State's motion for summary judgment. In an order pertaining solely to Lee, the district court found that "[b]ased upon the arguments presented and the authorities cited in Mid-State's well-reasoned memorandum of law and reply," Lee was not similarly situated in all relevant respects to Norman or any other Mid-State employee and, in any event, the reasons provided by Mid-State for the pay disparity were not pretextual. Dist. Dkt. No. 54 at 2. The district court denied Mid-State's request to enter a Rule 54(b) judgment at that time.

While the claims by the other plaintiffs remained pending, Mid-State moved for sanctions, pursuant to Federal Rule of Civil Procedure 11. Mid-State argued that the plaintiffs amended their complaint to add Lee as a plaintiff, despite knowing that Lee's education and work experience paled in comparison to Norman's and no good faith basis existed to support Lee's claims. The district

court denied Mid-State's motion for sanctions without comment, and later entered a final judgment in the case. Lee timely appealed the grant of summary judgment, and Mid-State cross-appealed from the denial of its motion for sanctions.

## II. DISCUSSION

Lee argues that the district court erred in finding that he had not established a prima facie case of race-based wage discrimination. Specifically, he contends that he was the only black to hold a management position at Mid-State and the only manager to be paid hourly. Also, when he became salaried, Lee made less than when working by the hour. Norman made $29,000 more than Lee and was provided with lodging and health insurance, both of which Lee was never offered. Furthermore, Norman received a $70,000 salary to perform allegedly half of the work which Lee had performed. No black has ever lived on the Sedgefields property. Lee argues that Mid-State utilized a two-tiered compensation system where blacks were paid less than whites.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich v. Thorton, 280 F.3d 1295, 1299 (11th Cir. 2002). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

8

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990) (quoting Fed.R.Civ.P. 56(c)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006).

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Claims of race discrimination under § 1981 are analyzed in the same manner as disparate treatment claims brought under Title VII. Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1109 n.4 (11th Cir. 2001). Title VII, in turn, makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). It is not unlawful "for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide

seniority or merit system . . . ."  42 U.S.C. § 2000e-2(h); <u>Mulhall v. Advance Sec.,

Inc.</u>, 19 F.3d 586, 597 (11th Cir. 1994) (noting that Title VII incorporates the

Equal Pay Act's exceptions to pay discrepancy).

 Because Lee relied on circumstantial evidence, the burden-shifting

framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.

Ct. 1817, (1973), and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 101

S. Ct. 1089 (1981), applies to his claim of race-based wage discrimination.  <u>See</u>

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)

(discussing an ADEA claim); <u>Mulhall</u>, 19 F.3d at 597 (gender-based wage

discrimination claims).  Under that framework, if a plaintiff establishes a <u>prima</u>

<u>facie</u> case of discrimination by a preponderance of the evidence, the burden shifts

to the employer to articulate a legitimate, nondiscriminatory reason for the alleged

discrimination.  <u>Mulhall</u>, 19 F.3d at 597.  If the employer does so, the plaintiff is

left with the burden of demonstrating that the employer's proffered reason is a

pretext for discrimination, <u>i.e.</u>, that the reason is false and discrimination is the real

reason.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515, 113 S. Ct. 2742, 2751-

52, (1993).  "This formula must not be applied mechanically, but flexibly, with a

view toward the particular [] procedures and factual situation presented."  <u>Phillips</u>

<u>v. Joint Legislative Comm. on Performance and Expenditure Review of the State</u>

of Miss., 637 F.2d 1014, 1027 (5th Cir. 1981) (discussing <u>McDonnell Douglas</u> failure to hire test).

In order to establish a <u>prima facie</u> case of intentional compensation discrimination based on race, the plaintiff must establish that: (1) he belongs to a racial minority; (2) received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage.  <u>Cooper v. S. Co.</u>, 390 F.3d 695, 734-35 (11th Cir. 2004). "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." <u>Id.</u> at 735-36 (quotation, citation, and emphasis omitted).  The plaintiff must show that he shared the same type of tasks as the comparators. <u>Id.</u> at 735. "A comparator is an employee similarly situated to the plaintiff in all relevant respects." <u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1280 (11th Cir. 2008) (internal quotations  and alteration omitted).  It is not always possible to find suitable comparators and we have noted that "if a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." <u>Id.</u> at 1277 (quotation, alterations, and emphasis omitted).

11

Lee did not establish a prima facie case because he failed to establish the existence of any similarly situated comparators. See Cooper, 390 F.3d at 735. With respect to Norman, Lee conceded that he did not have very similar job-related characteristics, noting the differences in education and experience, and that he and Norman should not have received the same income. Accordingly, Lee failed to establish that he and Norman were similarly situated in all relevant respects and may not use Norman's wage, lodging, insurance, and salary as the basis for alleging discrimination. See Rioux, 520 F.3d at 1280. With respect to the other white managers, to the extent sufficiently raised in his complaint, Lee failed to provide sufficient details regarding their qualifications and whether he and they shared the same types of tasks. See Cooper, 390 F.3d at 735-36. Moreover, the record suggests that not all white managers were salaried, does not address whether they received lodging or insurance, and indicates that Lee himself once lodged at Sedgefields on a frequent basis.[2] Accordingly, the district court correctly found that Lee failed to establish a prima facie case of wage discrimination based on race.

---

[2] Lee has also failed to establish a pattern or practice claim of discrimination, to the extent this is an issue on appeal, because pattern or practice claims may be litigated only in class actions. See Davis v. Coca Cola Bottling Co. Consol., 516 F.3d 955, 967-69 (11th Cir. 2008). Regardless, Lee cites no caselaw regarding such a claim in his brief and, therefore, the issue was abandoned to the extent raised. See Flanigan's Enters., Inc. of Georgia v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (per curiam) (holding party waives an issue where party did not elaborate or provide any citation of authority in support).

12

Finally, even assuming Lee established a <u>prima facie</u> case, he has failed to establish

pretext. According to Lee, Mid-State's only basis for arguing that Norman is not a

proper comparator is Norman's degree, an argument which fails because a

management employee is a comparator and Norman and Lee held similar titles and

performed similar duties.

The district court found that Lee had no experience with quail hunting, quail

operations, or bird dogs before coming to Sedgefields, but Norman had 27 years of

experience in bird dog training and handling, 24 years of experience in working on

quail hunting plantations, and 7 years of experience as a plantation manager

supervising up to 20 employees. Norman also had an associate's degree in wild

life management and experience in cultivating and maintaining wild quail

populations, both of which Lee lacked. Norman also offered Mid-State the

opportunity to expand its client base with potential customers from Norman's

former job in Georgia, which Lee did not.

As noted above, if a plaintiff establishes a <u>prima facie</u> case of discrimination

by a preponderance of the evidence, the burden shifts to the employer to articulate

a legitimate, nondiscriminatory reason for the alleged discrimination. <u>Mulhall</u>, 19

F.3d at 597. A plaintiff may not recast an employer's proffered reason or

substitute his business judgment for that of the employer. <u>Chapman</u>, 229 F.3d at

13

1030. If the reason is one that might motivate a reasonable employer, the plaintiff must meet that reason head on and rebut it, and cannot succeed by merely quarreling with the wisdom of that reason. Id.

Here, Lee has failed to meet most of Mid-State's proffered reasons head on, regardless of whether he presented one claim or four. See id. Instead, he attempts to substitute his business judgment for Mid-State's by arguing that he and Norman held similar titles and performed similar duties and, therefore, should have been similarly compensated, even though he conceded below that Norman had more education and experience, and that no quail hunts occurred in 2005 until after Norman was hired. It is also worth noting that Norman left Mill Pond for compensation reasons and, in addition to the pay raise offered by Mid-State, received all the benefits he had received at his previous job, including insurance. Accordingly, Lee did not show that Mid-State's reasons were false and that the true reason for the disparity in compensation was race, and the district court correctly found that Lee failed to establish pretext. Chapman, 229 F.3d at 1030.

Mid-State argues that the district court abused its discretion by denying the motion for sanctions. According to Mid-State, in responding to its motion for sanctions, Lee failed to discuss the applicable Rule 11 standards or explain the reasonable basis for his claim, and the district court erred by failing to conduct the

14

requisite Rule 11 inquiry and deciding not to sanction Lee. Mid-State argues that because Lee caused it to answer and defend a frivolous claim, he violated Rule 11, and sanctions are proper.

We review Rule 11 sanctions for an abuse of discretion. Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004) (quotation and citation omitted).

By presenting a pleading, written motion, or other paper to the court, an attorney certifies that, to the best of his knowledge, information, and belief, formed after a reasonable inquiry under the circumstances, the factual contentions have evidentiary support (or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery) and the legal contentions are warranted by existing law or a nonfrivolous argument for extending or altering existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2-3). Rule 11 sanctions are proper:

> (1) when a party files a pleading that has no reasonable factual basis;
> (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a

15

reasonable argument to change existing law; or (3) when the party
files a pleading in bad faith for an improper purpose.

Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996)

(quotation and citation omitted). Sanctions may be imposed on the attorney, law

firm, or party if Rule 11 is violated, the offending party is provided with an

opportunity to withdraw the objectionable pleading and fails to do so, and a motion

for sanctions is filed with the court. Fed. R. Civ. P. 11(c)(1-2). A court confronted

with a motion for Rule 11 sanctions must first determine whether the claims raised

are objectively frivolous and, if they are, whether the signer of the pleadings

should have been aware of their frivolous nature. Worldwide Primates, Inc., 87

F.3d at 1254. Even if the attorney had a good faith belief that the claims were

sound, sanctions must be imposed if the attorney failed to make a reasonable

inquiry. Id.

As noted above, the district court provided no reasons for its denial of Mid-

State's motion for Rule 11 sanctions, and Norman was not similarly situated to Lee

for the reasons discussed supra, even if "similarly situated" is loosely defined.

Nevertheless, it was not objectively frivolous to believe that Lee was similarly

situated to other white managers, in spite of some evidence to the contrary. See

e.g., Dist. Dkt. No. 44, Exh. 4 at 22-26. In his complaint, Lee specifically

compared himself only to Norman and did not mention other white managers, but

16

he did discuss a general disparity between the compensation of black and white employees. See Dist. Dkt. No. 21 at 3-5. Based on the record before us, we cannot conclude that the district court abused its discretion in denying the motion for Rule 11 sanctions. See Klay, 376 F.3d at 1096. Therefore, we AFFIRM the denial of sanctions.

### III.  CONCLUSION

For the reasons set out above we conclude that the district court properly determined that Lee failed to establish a prima facie case of racial discrimination and, alternatively, could not prove that Mid-State's legitimate, nondiscriminatory reasons for its compensation decisions were pretextual.   We also discern no error in the court's rejection of Mid-State's claim for Rule 11 sanctions.

Accordingly, we **AFFIRM.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

17

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
### BILL OF COSTS

JEFFREY HARRIS, et al.,
_____
                    Appellant

vs.                                              Appeal No. 07-14903-H

MID STATE LAND AND TIMBER COMPANY, Inc.
_____
                    Appellee

```
┌──────────────────────────────┐
│            FILED             │
│    U.S. COURT OF APPEALS     │
│      ELEVENTH CIRCUIT        │
│                              │
│        JUL 2 3 2008          │
│                              │
│       THOMAS K. KAHN         │
│           CLERK              │
└──────────────────────────────┘
```

Fed.R.App.P. 39 and 11th Cir. R. 39-1 (see reverse) govern costs which are taxable in this court and the time for filing the Bill of Costs.  A motion for leave to file out of time is required for a Bill of Costs not timely received.

### INSTRUCTIONS

In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced.  Multiply this number by the cost per copy ( $.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

| DOCUMENT | Repro. Method (Mark One) | | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
| | In-House | Comm* | | | | | |
| Appellant's Brief | | | | | | | |
| Record Excerpts | | X | 993 | 5 | 4695 | 1,241.25 | **1,241.25** |
| Appellee's Brief | | X | 43 | 9 | 387 | 96.75 | **96.75** |
| Reply Brief | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| *Note: If reproduction was done commercially, receipt(s) must be attached. | | | | TOTAL | | $    1,338.00 REQUESTED | $ **1,338.00** ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred or performed in this appeal and that I have served this Bill of Costs on counsel/parties of record.

Date Signed: _July 22, 2008_          Signature: _Kimberley W Geisler_

Attorney for: Mid State Land and Timber Co., Inc.          Attorney Name: Kimberly W. Geisler
          (Type or print name of client)          (Type or print your name)

True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

### FOR COURT USE ONLY

By: _____
Deputy Clerk
Atlanta, Georgia

Costs are hereby taxed in the amount of $ __**$1,338.00**__ against __**Appellant**__

and are payable directly to __**Appellee**__

Thomas K. Kahn, Clerk

AUG 0 7 2008

Issued on: _____          By: _Tricia C. Patterson_
                                                      Deputy Clerk

MISC-12
(12/07)